ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION MAGISTRATE'S DECISION
{¶ 1} Relator, Nick Strimbu, Inc. ("relator"), commenced this original action in mandamus requesting this court issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding respondent, Willie E. Marshall, Jr. ("respondent"), did not voluntarily abandon his employment when relator discharged him on September 28, 2000, for allegedly falsifying his employment application.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator filed objections to the Magistrate's Decision.
 {¶ 3} In his objections, relator first argues the magistrate erred when failing to find that respondent voluntarily abandoned his employment with relator pursuant to State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401. Specifically, relator contends the magistrate erred in finding that there was not a company policy defining falsification and further erred by applying the definition found in the Ohio Revised Code.
 {¶ 4} While Louisiana-Pacific, supra, sets forth a four-part test to determine voluntary abandonment, the critical element in the instant case is whether the respondent violated the written work rule or policy. We assume, as the commission did, that the language on the application providing that "false and misleading information is grounds for termination" is a work rule or policy even though the record does not indicate that the policy appears in an employee handbook. Relator argues that this phrase also serves as a definition for falsification. We disagree. Assuming this is a work policy or rule, relator must still prove that the employee did, in fact, violate this rule by falsification as indicated in respondent's termination letter dated September 28, 2000.
 {¶ 5} Because there is no operative definition in an employee handbook or elsewhere defining falsification, the magistrate looked to R.C. 2921.13. We agree that the Revised Code provides a workable definition and constitutes some evidence supporting the commission's order that inherent in every claim of falsification is the element of intent. Accordingly, relator's first objection is overruled.
 {¶ 6} In his second objection, relator asserts that the magistrate erred in finding that there must be "intent" on the part of the employee in order to make a finding of voluntary abandonment. Further, relator argues that the magistrate erred in finding that the commission could have believed that respondent did not intend to falsify his employment application.
 {¶ 7} While the court agrees with relator that nowhere inLouisiana-Pacific, supra, does the court speak to intent being necessary to find voluntary abandonment, it is a necessary element to find falsification as defined by R.C. 2921.13. The magistrate, in agreement with the DHO and the SHO, determined that the relator failed to establish the scienter element of falsification. Consequently, there was insufficient evidence to establish that respondent violated relator's work rule.
 {¶ 8} The commission is the exclusive evaluator of evidentiary weight and the credibility of witnesses. As indicated in the record, there is some evidence that respondent did not intend to falsify his employment application. Accordingly, relator's second objection is overruled.
 {¶ 9} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the facts and applied the salient law to them. Accordingly, we overrule the objections to the magistrate's decision and adopt the magistrate's findings of fact and conclusions of law as if they were our own. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled;
writ of mandamus denied.
Lazarus and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Nick Strimbu, Inc., : Relator, : v. : No. 03AP-71 Industrial Commission of Ohio : (REGULAR CALENDAR) and Willie E. Marshall, Jr., : Respondents. :
 Rendered on July 29, 2003. IN MANDAMUS {¶ 10} In this original action, relator, Nick Strimbu, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that it holds that respondent Willie E. Marshall, Jr. ("claimant") did not voluntarily abandon his employment when relator discharged him on September 28, 2000 for allegedly falsifying his employment application.
Findings of Fact:
 {¶ 11} 1. On August 23, 2000, claimant applied to relator for a job as a truck driver. Relator's application form explains that all driver applicants must complete the employment history. The applicant is instructed to list employers in reverse order starting with the most recent. Claimant listed five previous employers. He indicated that his fifth employment ended in 1993.
 {¶ 12} 2. Claimant failed to list his employment with P.I.I. Motor Express ("P.I.I.") from September 1994 to May 1995.
 {¶ 13} 3. Claimant signed the employment application immediately below the following preprinted warning: "In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge."
 {¶ 14} 4. Claimant was hired by relator as a truck driver.
 {¶ 15} 5. On September 12, 2000, claimant sustained an industrial injury while employed as a truck driver for relator. The industrial claim was initially allowed for: "sprain of neck," and assigned claim number 00-509360.
 {¶ 16} 6. Claimant's treating physician, Dr. Morrison, certified a period of temporary total disability ("TTD") from September 13, 2000 through November 17, 2000.
 {¶ 17} 7. Claimant moved for the recognition of additional claim allowances and for the payment of TTD compensation.
 {¶ 18} 8. According to the handwritten notes of Mr. James Buchman, relator's director of human resources, on September 22, 2000, he received a fax from relator's third party administrator Sheakely Uniservice, Inc., showing that claimant had a workers' compensation claim against P.I.I. Mr. Buchman called P.I.I. and confirmed that claimant had worked there.
 {¶ 19} 9. Mr. Buchman's handwritten notation of September 27, 2000 states:
Got call from Ginne Prokes. She said if employee falsified his app[lication] or made false statements we could discharge him and he would not be el[igible] for TT [TTD compensation].
 {¶ 20} 10. On September 27, 2000, Mr. Buchman also made the following notation regarding a telephone conversation he had on that day with claimant:
* * * I asked him if he had worked at [P.I.I.] Motor Express before. He hesitated and said yes. I asked why he didn't put it on his application. He told me he had problems there and he wasn't employed there to[o] long. I told him 8 months. I also told him that by falsifying his app[lication] the[re] might be some problems.
 {¶ 21} 11. On September 28, 2000, relator's vice president of safety, Mr. Robert L. Baker, mailed to claimant a letter notifying him that he was discharged from his employment effective September 28, 2000. The letter states in part:
It has been brought to my attention that you have falsified your employment application. We received information that you were employed with P.I.I. Motor Express from 9-3-94 thru 5-11-95. The employment application that you completed for Nick Strimbu, Inc. clearly states that false or misleading information may result in discharge.
 {¶ 22} 12. Thereafter, relator moved that "no further compensation be considered after 9/28/00 as the claimant voluntarily abandoned employment."
 {¶ 23} 13. Following a December 8, 2000 hearing, a district hearing officer ("DHO") denied claimant's motion for the additional claim allowances and also denied the request for TTD compensation from September 13, 2000 to November 17, 2000 on grounds that Dr. Morrison's C-84 report's "address the claimant's disability in the context of allowed and non-allowed conditions."
 {¶ 24} 14. The DHO's order further states:
In issuing this order, the District Hearing Officer also notes the employer's argument that in the alternative claimant would not be entitled to temporary total compensation beyond 9/28/00 for the reason that claimant violated a written company policy and that such violation resulted in his discharge from employment on 9/28/00. Specifically, the employer argues that claimant made misrepresentations on his employment application as to his previous employment in that he did not disclose his prior employment with [P.I.I.] as a driver. The employer argues that such conduct is prohibited by the company's policy as set forth on this application form itself. The employer alleges that it discharged the claimant when this misrepresentation was discovered in accord with the above policy. Accordingly, the employer asserts that under the decision set forth in Stateex rel. Louisiana Pacific Corp. vs. IndustrialCommission (1995) 72 Ohio St.3d 401, claimant can be deemed to have voluntarily abandoned his employment so as to preclude the receipt of temporary total compensation in this claim.
The District Hearing Officer denies the employer's argument in this regard. The District Hearing Officer finds that although the stated purpose for the claimant's termination was for the reason that the claimant `falsified his employment application,' there is insufficient evidence to establish a falsification finding. Inherent in any claim of `falsification' is a consideration of intent on the part of the alleged violator. Here, there has been no evidence presented to establish that claimant intended to falsify or mislead the employer when completing his employment application. To the contrary, claimant testified at hearing that it was an oversight on his part that resulted in his failure to list [P.I.I.] as a previous employer. Claimant did list five other employers for which he worked during the last ten year period, one of which he previously filed a workers' compensation claim against. Given the claimant's testimony at hearing and the nature of his omission, the District Hearing Officer is not persuaded that claimant intended to provide false or misleading information on his employment application so as to trigger the preclusive effect against receiving temporary total compensation as explained in State ex rel. Louisiana Pacific.
Specifically, the District Hearing Officer finds a lack of evidence to support the employer's contention that the claimant's omission of his prior employment with [P.I.I.] on his employment application constituted an intentional plan by the claimant to deceive this employer so as to render the claimant in violation of company policy. Simply stated, claimant's omission of this information without evidence of an intent to deceive the employer cannot be found to constitute a `falsification' or `misrepresentation' in this regard.
 {¶ 25} 15. Both claimant and relator administratively appealed the DHO's order of December 8, 2000.
 {¶ 26} 16. The administrative appeals were heard by a staff hearing officer ("SHO") on March 23, 2001. The hearing was recorded and transcribed for the record. Claimant testified at the hearing. The transcript discloses the following exchange between claimant's counsel and claimant:
[Claimant's counsel]: Willie, when you first started working for this employer, did you fill out an employment application?
[Claimant]: Yes, I did.
[Claimant's counsel]: And did they ask you to list former employers?
[Claimant]: Yes, they did.
[Claimant's counsel]: Okay. Did you list one of the former employers which was PII?
[Claimant]: No, I didn't.
[Claimant's counsel]: And apparently from my review of the records it appears that you did work for them from September 30 of '94 through May 11 of '95. Does that sound approximately correct?
[Claimant]: I guess, yeah.
[Claimant's counsel]: Okay. And why didn't you indicate on the application that you had previously driven for them?
[Claimant]: Well, it was just something — I just forgot about them.
* * *
[Claimant]: Can I say something?
[Claimant's counsel]: Sure.
[Claimant]: All of my employers are not listed here in between stuff because there was some other than [P.I.I.] that I couldn't remember and stuff. Even the dates on here are not correct and stuff because I couldn't quite remember the dates of when I started and when I stopped.
[Claimant's counsel]: Okay. So this was an approximate employment history to the best of your recollection at that time?
[Claimant]: Yes.
[Claimant's counsel]: Okay. Basically we don't feel that there was any intent to deceive or there was any deception. * * *
Id. at 11-13.
17. On cross-examination of claimant by relator's counsel, the following exchange occurred:
[Relator's counsel]: But you still — and you testify there today that you didn't remember all of those employers; but yet you still didn't tell anybody at Nick Strimbu that maybe you need some help here, I'm not sure I got all my prior employers listed here?
[Claimant]: Correct.
[Relator's counsel]: And why was that?
[Claimant]: That's just because I assumed that I — you know, like I said and stuff, the ones that I assumed that I remembered, okay, at the time and stuff, okay. I didn't sit up there and second guess or anything, okay. I just filled in what I thought where I worked at. There was some, like I said, in between that I forgot. It wasn't like I intentionally did it or anything.
* * *
[Relator's counsel]: Do you remember talking to Mr. Jim Buchman on September 27, 2000?
[Claimant]: I don't remember the date. I talked to him several days.
[Relator's counsel]: Do you remember talking to him about your failure to complete in full fashion this employment application?
[Claimant]: About — I remember him asking me did I complete it.
[Relator's counsel]: Yeah.
[Claimant]: I mean, he didn't ask me did I complete it' he asked me why didn't I put down [P.I.I.], I remember that.
* * *
[Relator's counsel]: And what did you tell him?
[Claimant]: I told him I forgot.
[Relator's counsel]: Is that the truth?
[Claimant]: That's the truth. I told him I forgot.
Id. at 15-16, 18, 19.
 {¶ 27} 18. At the March 23, 2001 hearing, relator's counsel called Mr. Buchman as a witness. Mr. Buchman testified:
I called Willie, and I asked him if he had worked at PII before and there was a pause. And he said yes. And I said why didn't you put it on your application. And he said I had some problems there. And I said well that wasn't a good answer. And I said there might be some problems that arise from that because of you falsifying your application. That was the extent of the conversation.
Id. at 31-32.
 {¶ 28} 19. On cross-examination by claimant's counsel, Mr. Buchman testified as follows:
[Claimant's counsel]: And there's something in here also that she apparently told you that you could discharge him. So she told you that you could discharge him for falsification of the application, is that correct, and if you did that you would not be required to pay the temporary total disability in the claim?
Mr. Buchman: That's the information she gave us.
[Claimant's counsel]: So she told you hey, if you discharge this guy for falsified application you're not gonna have to pay any temporary total disability?
Mr. Buchman: But that's not the reason we discharged him.
[Claimant's counsel]: What was the reason you discharged him?
Mr. Buchman: Because he falsified his application.
[Claimant's counsel]: Okay.
Mr. Buchman: It had nothing to do with the workers' comp[ensation] claim.
Id. at 38-39.
 {¶ 29} 20. Following the March 23, 2001 hearing, the SHO issued an order affirming the DHO's order of December 8, 2000. The SHO's order of March 23, 2001 does not add to or subtract from the findings of the DHO regarding the discharge.
 {¶ 30} 21. Both relator and claimant filed notices of appeal from the SHO's order of March 23, 2001. On April 21, 2001, the commission refused to hear appeals from the SHO's order of March 23, 2001.
 {¶ 31} 22. On January 27, 2003, relator, Nick Strimbu, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 32} The issue is whether the commission misapplied Stateex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, in determining that claimant did not voluntarily abandon his employment when he was discharged on September 28, 2000 for allegedly falsifying his employment application.
 {¶ 33} Finding that the commission did not misapplyLouisiana-Pacific, or otherwise abuse its discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 34} In Louisiana-Pacific, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
* * * [W]e find it difficult to characterize as `involuntary' a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft [State ex rel. Ashcraft v.Indus. Comm. (1987), 34 Ohio St.3d 42] and Watts [State exrel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
Id. at 403.
Recently, in State ex rel. McCoy v. Dedicated Transport,Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, at ¶ 8, the court stated:
In Louisiana-Pacific Corp., * * * we recognized that a justifiable discharge for misconduct can constitute a voluntary abandonment of the claimant's former position of employment so as to bar subsequent TTD compensation. We found that, although not generally consented to or initiated by the employee, firing can take on a voluntary character when it is a consequence of wrongful or prohibited behavior that the claimant willingly undertook and should have expected to result in discharge. * * *
 {¶ 35} R.C. 2921.13 sets forth the crime of falsification. It provides that "[n]o person shall knowingly make a false statement" when any of the several scenarios set forth in the statute apply.
 {¶ 36} Relator's September 28, 2000 discharge letter accuses claimant of having "falsified" his employment application, noting that the application itself warns that false or misleading information may result in discharge.
 {¶ 37} Apparently, relator has not published a company rule defining the dischargeable offense of falsification. Accordingly, R.C. 2921.13 provides a workable definition for purposes of this action.
 {¶ 38} Under R.C. 2921.13, falsification occurs when a personknowingly makes a false statement under certain situations identified in the statute. Falsification cannot occur when a person unintentionally makes a false statement.
 {¶ 39} Given the scienter requirement for falsification, the commission did not abuse its discretion, nor misapplyLouisiana-Pacific, supra, by inquiring into claimant's "intent" when he filled out the application.
 {¶ 40} Moreover, the commission, in its DHO's order of December 8, 2000, which was administratively affirmed, set forth the evidence relied upon to support a finding that claimant did not knowingly or even intentionally submit false or misleading information on the employment application. Essentially, the commission relied upon claimant's hearing testimony which clearly provides the some evidence to support the commission's decision.
 {¶ 41} It is the commission that weighs the evidence. It was within the commission's fact-finding discretion to believe claimant's testimony.
 {¶ 42} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.