[Cite as *Brenneman Bros. v. Allen Cty. Commrs.*, 2015-Ohio-148.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

BRENNEMAN BROTHERS, ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO.  1-14-15

    v.

ALLEN COUNTY COMMISSIONERS,       O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2012 0432

**Judgment Affirmed**

Date of Decision:   January 20, 2015

APPEARANCES:

    *Michael A. Rumer and Zachary D. Maisch* **for Appellants**

    *Gregory M. Antalis*  **for Appellee**

**ROGERS, P.J.**

{¶1} Plaintiffs-Appellants, Brenneman Brothers, Stanley Brenneman and Kim Brenneman (collectively "the Brennemans"), appeal the judgment of the Court of Common Pleas of Allen County, affirming the adoption of Resolution #421-12 of Defendants-Appellees, the Allen County Commissioners ("the Board"), which disallowed the Brennemans' objections to the estimated assessments arising from a ditch-improvement project known as the Wrasman Project #1268 ("the Wrasman Project"). On appeal, the Brennemans argue that the trial court erred (1) by applying the wrong burden of proof when considering whether a public body held a closed meeting in violation of R.C. 121.22 ("Open Meetings Act"); (2) by failing to invalidate Resolution #421-12 for being illegal because it utilized a document that was illegally backdated; and (3) by not vacating the Wrasman project for the Board's failure to adopt a final schedule of assessments. For the reasons that follow, we affirm the trial court's judgment.

{¶2} This is the third appeal in which the Brennemans have challenged the Board's actions concerning the Wrasman Project. *See Brenneman v. Allen Cty. Bd. of Commrs.*, 196 Ohio App.3d 60, 2011-Ohio-4032 (3d. Dist.) ("*Brenneman I*"); *Brenneman Bros. v. Allen Cty. Commrs.*, 3d Dist. Allen No. 1-13-14, 2013-Ohio-4635 ("*Brenneman II*"). A detailed procedural and factual history of the

Brenneman's challenges to the Wrasman Project can be found in *Brenneman II*. *See Brenneman II* at ¶ 2-15.

{**¶3**} The facts relevant to the current appeal are as follows. In *Brenneman I*, this court found that the trial court abused its discretion when it used its resolution of a different case as the basis for dismissing the Brennemans' appeal. *Brenneman I* at ¶ 15. After our remand in *Brenneman I*, the trial court vacated the Board's approval of the Wrasman Project. *Brenneman II* at ¶ 4. On January 12, 2012, at least two members of the Board, the Board's counsel, Greg Antalis, and the Board's clerk, Kelli Singhaus, met with Dan Ellerbrock and Steve Langenkamp, employees of the Allen County Soil and Water Conservation District ("Soil and Water") and others. According to a Soil and Water diary entry authored by Langenkamp, the group discussed options as to how to proceed after the trial court's ruling subsequent to this court's decision in *Brenneman I*. Antalis suggested that no action be taken until after the time for any further appeal had expired and Ellerbrock recommended that Soil and Water resubmit the Wrasman Project to the Board.

{**¶4**} After no challenge to the trial court's order vacating the original Wrasman Project occurred, Antalis sent a letter to Soil and Water requesting that it resubmit the Wrasman Project to the Board without change. On February 15, 2012, Soil and Water resubmitted the Wrasman Project to the Board. The Board

approved the Wrasman project in Resolution #267-12 on April 26, 2012. That same day, the Board also adopted Resolution #268-12, which acknowledged receiving a schedule of estimated assessments from Soil and Water and further directed the clerk to notify landowners of the estimated assessments for their respective properties. Attached to this resolution was the schedule of estimated assessments which bore a printed date of April 23, 2012, but also bore a time stamp of the date it was received by the Board of March 22, 2012.

{¶5} The Brennemans objected to these estimated assessments through counsel at a July 9, 2012 hearing of the Board. After the hearing, the Board passed Resolution #421-12, which overruled their objections. The Brennemans appealed the adoption of this resolution to the trial court, as well as the adoption of Resolution #267-12 approving the Wrasman Project. The trial court consolidated the two cases, and allowed the Brennemans to present additional evidence to supplement the record through an evidentiary hearing. The Board moved to dismiss the Brennemans' challenge to Resolution #267-12, arguing that the trial court lacked subject matter jurisdiction over a legislative act. The Brennemans concurred with the dismissal at the beginning of the evidentiary hearing held on December 13, 2012.

{¶6} At the hearing, Ellerbrock testified that he did not know how the estimated schedule of assessments had a printed date that was later than the stamp

indicating the date it was received by the Board. He also testified that he did not remember whether the January 12, 2012 meeting with the Board was open to the public, but that the Soil and Water diary entry accurately reflected what transpired. An additional evidentiary hearing was held on January 18, 2013. Doug Degen, a drainage engineer for Allen County, testified that he did not recall attending the January 12, 2012 meeting as indicated in the Soil and Water diary.

{¶7} Singhaus also testified and stated that she had no explanation as to why the date stamp and printed dates did not match on the schedule of estimated assessments. She further testified that she had a record of a meeting on January 12, 2012, that occurred at the Board's office with a "purpose to discuss the Wrasman ditch * * *." January 18, 2013 Hearing Tr., p. 54. Two Board members were present, and they "went into executive session at one-thirty-one p.m. to discuss actual litigation." *Id.* at p. 55.

{¶8} The Brennemans filed a supplemental merit brief on January 28, 2013, which argued that the Wrasman Project was illegal, as it was adopted based upon deliberations held in a meeting not open to the public in violation of the Open Meetings Act. The Board filed its response on February 6, 2013, arguing that the trial court lacked subject matter jurisdiction in an administrative appeal to consider an Open Meetings Act violation. The Brennemans' filed their rebuttal on February 11, 2013.

{¶9} On February 12, 2013, the trial court denied the Brennemans' appeal. In its judgment entry, the trial court found that it did not have subject matter jurisdiction, in an administrative appeal, to determine whether the Board's adoption of Resolution #421-12 was invalid for being in violation of the Open Meetings Act. In *Brenneman II*, this court found that the trial court had subject matter jurisdiction and remanded the case back to the trial court to determine whether an Open Meetings Act violation occurred. *Brenneman II* at ¶ 34.

{¶10} No additional proceedings occurred after our decision in *Brenneman II*. In its April 16, 2014 judgment entry, the trial court found that the Brennemans had proved that a meeting occurred on January 12, 2012, the meeting was not a regular meeting, and it was likely not open to the public. However, the trial court also found that the Brennemans had failed to prove that the meeting was not a special meeting or that the Board failed to go into executive session through a roll call vote. Further, the trial court found that the subject matter discussed fell under an exception to the Open Meetings Act for conferences with counsel regarding litigation. The trial court found that the Brennemans "did not show by the preponderance of the evidence that the [R.C.] 121.22(G)(3) exception was not applicable or not valid. So, they did not meet their burden of proof to show that the Board violated the open meetings law." (Docket No. 48, p. 13). The judgment entry also incorporated that trial court's February 12, 2013 judgment entry.

{¶11} The Brennemans timely filed this appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED WHEN IT CONCLUDED THE APPELLANTS HAD FAILED TO MEET THEIR BURDEN OF PROOF TO SHOW THAT THE BOARD HAD VIOLATED THE OPEN MEETINGS ACT.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT A DOCUMENT WHICH WAS BACK DATED AS PART OF THE PUBLIC RECORD DOES NOT INVALIDATE THE BOARD'S RESOLUTION DUE TO SUCH AN ILLEGAL ACT.**

### Assignment of Error No. III

**THE TRIAL COURT ERRED BY NOT VACATING THE WRASMAN PROJECT DUE TO THE BOARD'S FAILURE TO ADOPT A FINAL SCHEDULE OF ASSESSMENTS PURSUANT TO R.C. 1515.24(D)(2).**

### Standard of Review

{¶12} Property owners may ask the court of common pleas to review the overruling of objections to assessments. R.C. 1515.24(D)(3); R.C. 2506.01(A); *Brenneman I* at ¶ 9. The court of common pleas considers the whole record to determine whether the decision to overrule the objections was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence." R.C. 2506.04; *Henley v.*

*Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). Appellate review of the trial court's judgment is more limited in scope and does not include the same power to weigh the evidence granted to the court of common pleas. *Toledo Edison Co. v. Bd. of Defiance Cty. Commrs.*, 3d Dist. Defiance No. 4-13-04, 2013-Ohio-5374, ¶ 17. The judgment of the court of common pleas will not be overturned absent an abuse of discretion. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 41.

{¶13} A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Assignment of Error No. I*

{¶14} In their first assignment of error, the Brennemans argue that the trial court applied the incorrect burden of proof when deciding whether the January 12, 2012 meeting violated the Open Meetings Act. Specifically, the Brennemans argue that the Board had the burden to prove that it properly entered into an executive session through a roll call vote. In the alternative, the Brennemans

argue that the Board failed to prove that the executive session was authorized under an exception to the statute. We disagree.

{¶15} Initially, we must clarify what is properly under review. The Brennemans do not dispute that the resolutions approving the Wrasman Project, establishing the estimated schedule of assessments, or overruling the objections, were adopted at meetings open to the public. Instead, the Brennemans argue that the Wrasman Project was deliberated at a meeting on January 12, 2012, which was not open to the public in violation of the Open Meetings Act. The Brennemans further argue that all subsequent actions taken by the Board, including the approval of the Wrasman project, the approval of the estimated schedule of assessments, and the overruling of the objections, were all based upon these deliberations, and thus invalid.

{¶16} While the trial court determined that Resolution #267-12, which approved the Wrasman Project, was not adopted in violation of the Open Meetings Act, the only administrative appeal before the trial court was the Brennemans' challenge to the Board's adoption of Resolution #421-12, which overruled the objections to the estimated schedule of assessments. Indeed, the Brennemans had also administratively appealed the adoption of Resolution #267-12, but had agreed to dismiss the claim when the Board argued that the trial court lacked subject matter jurisdiction to review legislative acts. They cannot now claim that the trial

court can invalidate the Wrasman Project when they agreed that the trial court lacked subject matter jurisdiction to review the resolution that approved it.

*Procedures*

{¶17} The Open Meetings Act states that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). A formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless (1) the meeting not open to the public was an executive session; (2) the public body utilized the proper procedures to enter into an executive session; and (3) the executive session was for a reason enumerated as one of the exceptions to the Open Meetings Act under R.C. 121.22(G). R.C. 121.22(H). A public body can only enter an executive session from a properly held regular or special meeting, and only after a roll call vote of a quorum of the members present. R.C. 121.22(G). To properly hold a special meeting, the public body must follow the required notice procedures. R.C. 121.22(F).

{¶18} However, "the party asserting a violation of [the Open Meetings Act] has the ultimate burden to prove [the Act] was violated (or was threatened to be violated) by a public body." *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 12th Dist. Clermont Nos. CA2011-05-045, CA2011-06-047, 2012-Ohio-2569, ¶ 24. The burden never leaves the party asserting a violation. *Id.*

Further, "the presumption of regularity applies to official actions pursuant to the official's ordinary duties of office." *L.J. Smith, Inc. v. Harrison Cty. Bd. of Revision*, 140 Ohio St.3d 114, 2014-Ohio-2872, ¶ 28.

> The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner.

*State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 590 (1953); *see also Thomas v. Bd. of Trustees of Liberty Twp.*, 5 Ohio App.2d 265, 268 (7th Dist.1966) (finding that township trustees were presumed to have followed the Open Meetings Act). The presumption must be rebutted with actual evidence, and not bare allegations. *In re Application of Am. Transm. Sys., Inc.*, 125 Ohio St.3d 333, 2010-Ohio-1841, ¶ 23.

{¶19} Here, the trial court applied the correct legal standard, as it found that the Brennemans had the burden to prove that the Board did not follow the correct procedures and violated the Open Meetings Act. Further, the Brennemans offered no evidence to rebut the presumption that the Board acted legally when it held the January 12, 2012 meeting. There is no evidence indicating that the Board failed to follow the proper procedures to call a special meeting or enter executive session. Singhaus was not asked whether notice was given for the meeting or whether a roll call vote was taken to enter executive session, nor were her notes of the meeting

offered into evidence. None of the County Commissioners were called to testify as to whether the procedures were followed and the minutes of the meeting are not a part of the record. Ellerbrock was not asked these questions, and Doug Degen testified that he did not remember attending the meeting. The Brennemans presented no affirmative evidence that the Board failed to follow the procedures necessary for entering an executive session. As the Brennemans had the burden to prove a violation occurred, and the Board enjoys the presumption that it acted legally, the trial court did not abuse its discretion in finding that the Board followed the proper procedures when entering into executive session.

*Exception*

{¶20} The trial court found that the January 12, 2012 meeting did not violate the Open Meetings Act because it was for a purpose under R.C. 121.22(G)(3), which excepts "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." The Brennemans argue that the exception "only permits the Board's counsel to be present in executive session to discuss matters of litigation." Appellant's Br., p. 9. However, the Brennemans cite no case law for this proposition, nor does the statute restrict who can be a part of the meeting with the public body. Consequently, we reject the narrow interpretation that only the

public officers and the attorney can be present at an executive session where litigation is discussed.[1]

{¶21} Indeed, it is unclear from the record whether an exception is necessary. As the Board enjoys the presumption that it followed the law when conducting its meetings, it is presumed that the meeting started as an open, special meeting before the Board went into executive session. Further, it is presumed that any discussion of public business occurred during the part of the meeting that was open. The Brennemans provided no evidence as to whether the discussion with Soil and Water occurred during the open or closed portions of the meeting, and therefore failed to rebut these presumptions.

*Deliberations*

{¶22} Even assuming that the Board failed to follow the proper procedures to hold a special meeting or enter executive session at the January 12, 2012 meeting, it does not change our result. The Open Meetings Act

> is not intended to prevent a majority of a board from being in the same room and answering questions or making statements *to other persons who are not public officials*, even if those statements relate to public business. The [Open Meetings Act] is instead intended to prohibit the majority of a board from meeting and discussing public business *with one another*.

---

[1] We note that the Brennemans did not challenge whether the meeting was in fact for a conference with an attorney regarding pending litigation, and instead only attacked the procedures the Board used to enter executive session.

(Emphasis sic.) *Holeski v. Lawrence*, 85 Ohio App.3d 824, 830 (8th Dist.1993). A violation of the Open Meetings Act does not occur unless the public body both meets and deliberates public business. *Wilkins v. Village of Harrisburg*, 10th Dist. Franklin No. 12AP-1046, 2013-Ohio-2751, ¶ 19.

{¶23} "The mere fact an issue of public concern is raised in closed session does not necessarily mean the action was deliberated." *Stainfield v. Jefferson Emergency Rescue Dist.*, 11th Dist. Ashtabula No. 84-CA-51, 2010-Ohio-2282, ¶ 35. Deliberations include more than information gathering, investigation, or fact-finding, and require that the public body entertain a discussion of public business among its own members. *Wilkins* at ¶ 21. A discussion includes an exchange of words, comments, and ideas between the members of the public body, and not a question-and-answer session with other persons. *Krueck v. Kipton Village Council*, 9th Dist. Lorain No. 11CA009960, 2012-Ohio-1787, ¶ 14. "[I]n the absence of deliberations or discussions by the public body's members, such a session is not a 'meeting' as defined by the act, so it need not occur in public." *Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703, ¶ 15 (1st Dist.).

{¶24} Even where deliberations occur at a meeting in violation of the Open Meetings Act, that violation does not invalidate a later action of the public body without a showing of causation. *Greene Cty. Guidance Center, Inc. v. Greene-*

*Clinton Community Mental Health Bd.*, 19 Ohio App.3d 1, 5 (2d Dist.1984). The Open Meetings Act only invalidates a formal action taken by a public body at a public meeting where the evidence in the record makes clear that the decision to take the formal action was largely the result of the prior deliberations in an improperly closed meeting. *See Maddox v. Greene Cty. Children Servs. Bd. of Dirs.*, 2d Dist. Greene No. 2013-CA-38, 2014-Ohio-2312, ¶ 32-33 (finding action of the board was clearly based upon numerous improper executive meetings, which invalidated a resolution at a properly held meeting); *Sprecht v. Finnegan*, 149 Ohio App.3d 201, 2002-Ohio-4660, ¶ 30-31 (6th Dist.) (hiring of police chief was invalid where the evidence in the record indicated that the trustees had ranked the candidates during a closed meeting); *Myers v. Hensley*, 3d Dist. Hardin No. 6-99-02, 1999 WL 797140, *3 (Sept. 23, 2999) (finding that decision to pass resolution was based upon improper closed meeting, where no subsequent public discussion on the issue was allowed).

{¶25} The trial court began its analysis by stating that the Brennemans

carried their initial burden by showing by preponderance of evidence that a meeting * * * of the majority of the members of the Board (at least Sneary and Reiff) occurred on January 12, 2012 and that the general public was probably excluded from that meeting. Once it was demonstrated that at least two members of the Board were present at the meeting on January 12, 2012, the burden then shifted to the Board to produce or go forward with evidence that the challenged meeting fell under one of the exceptions of R.C. 121.22(G).

(Docket No. 48, p. 10). While the trial court determined that a meeting occurred, it failed to determine what occurred at the meeting. Nowhere in the trial court's judgment entry does it find that the Wrasman Project was deliberated at the January 12, 2012 meeting, let alone how to handle any possible objections. Assuming that the trial court found that deliberations occurred, this finding is not supported on the record.

{¶26} As discussed, we must presume that the board acted in a lawful manner absent evidence to the contrary, requiring affirmative evidence in the record to prove that the Board deliberated at the January 12, 2012 meeting. None of the members of the Board were called to testify as to whether they discussed any plans *with one another* at the meeting. Ellerbrock only testified that the diary accurately reflected what transpired at the meeting; he was not otherwise asked what was discussed between the different people attending the meeting. While Singhaus testified that her notes indicate that the purpose of the meeting was to discuss the Wrasman Project, she was not asked whether the Board discussed the project with each other or with the others present at the meeting. Her notes are not in the record, nor are the minutes. Indeed, the only evidence as to what actually occurred comes from the Soil and Water diary. The January 12, 2012 entry in the diary states:

> Dan Ellerbrock + (sic) I met w/ the three commissioners Sneary, Reiff + (sic) Bassit, Greg Antalis, Kelli Singhaus, Doug Degen, Tim

> Piper and Nathan Davis to discuss plan of action for this project. Judge Warren in favor of Brenneman's so Greg Antalis wanted to file an appeal. After some discussion Dan Ellerbrock suggested instead of appealing why not just bring the project back before the commissioners. This time we will have included all the necessary paperwork. Greg Antalis said before we do anything will have to wait till the 30 day appeal period is over. In the meantime Greg will be working with us to come up with a plan on how to continue.

Evidentiary Hearing Tr., Plaintiff's Exhibit 9, p. 3.

**{¶27}** The next entry, dated January 17, 2012, states:

> I spoke with Jim Dutton today. He wanted some information on project and what was going on. I told him that we had a meeting with the commissioners and Antalis last week. Told him that Antalis the Attorney would be working *with us to come up w/ a plan* and that we were waiting for the 30 day appeal period to be over before we do anything.

(Emphasis added.) *Id.* The January 18, 2012 entry states:

> I informed the board at the board meeting this morning the progress with this project. I told them about Judge Warren's decision. I told them that Dan Ellerbrock and I met with the Commissioners + (sic) Greg Antalis to discuss are (sic) plans for the project. I told the board that we would like to wait to the 30 day appeal period is over. After that we will give the commissioners all the necessary paperwork. *It will then be up to the commissioners if they want to approve the project.*

(Emphasis added.) *Id.* at p. 2.

**{¶28}** On February 8, 2012, Antalis sent a letter to Ellerbrock, which stated that no appeal had been taken from the trial court's judgment overturning the approval of the Wrasman Project on remand from this court's ruling in *Brenneman I.* The letter went on to state:

Therefore, I believe it is safe at this time for Soil and Water District to once again certify this project to the Allen County Commissioners for approval of construction.

I want to make sure that the project as approved is exactly the same as was previously approved by Soil and Water, with no distinguishing new characteristics which would require a new vote of Soil and Water to recommend sending the project to the commissioners for approval of construction. If the project is unchanged, send it on to the commissioners once again, *and they will then hopefully act with my guidance, in a proper manner, in approving the project* and scheduling an assessment hearing with regard to the individual assessments to the landowners in the watershed.

(Emphasis added.) Evidentiary Hearing, Plaintiff's Exhibit 10, p. 1.

{¶29} The only evidence in the record is that Soil and Water discussed how it was going to proceed. Indeed, the recertification of the Wrasman Project was suggested by Ellerbrock, not the Board. There is nothing in the record that states that the Board made any kind of decision as to how it would proceed if Soil and Water recertified the project unchanged or did anything other than ask questions and discuss with others what they believed the best course of action may be. Further, the diary entries state that it would be up to the Board whether it wants to reapprove the project, indicating that they had not agreed on a plan of action at the meeting. This is supported by the letter from Antalis, which indicates his hope that the Board will reapprove the project.

{¶30} Even if the matter was deliberated at the meeting, the Brennemans have failed to prove causation. At the time of the meeting, there was no Wrasman

Project, as the trial court had invalidated the original resolution approving the actual project itself after our ruling in *Brenneman I*. Ellerbrock and Langenkamp were employees of Soil and Water, and could not assure that the Board of Supervisors would approve the Wrasman Project unchanged a second time. There was no indication as to what kind of objections would be raised if the project was reapproved. Any deliberations regarding the project would have been speculation upon speculation, as numerous other actions would have to take place before the Board could approve anything.

{¶31} Without evidence of deliberation, closing the January 12, 2012 meeting to the public would not violate the Open Meetings Act. Without any link between what was deliberated at that meeting and the vote overruling the objections to the project, any violation of the Open Meetings Act that occurred at the January 12, 2012 meeting does not invalidate the adoption of Resolution #421-12.

{¶32} Accordingly, the Brennemans' first assignment of error is overruled.

*Assignment of Error No. II*

{¶33} In their second assignment of error, the Brennemans argue the schedule of estimated assessments was improperly backdated. They further argue that the backdating constitutes falsification under R.C. 2921.13, and is thus an

illegal act, which required the trial court to nullify the adoption of the Wrasman Project. We disagree.

{¶34} Here, the trial court found that regardless of the date the estimated schedule of assessments was time stamped (March 22, 2012) or printed (April 23, 2012), the Board had the document in its possession when it voted to approve the Wrasman Project on April 26, 2012. Without deciding whether the schedule was illegally backdated, the trial court found that the backdating was irrelevant for the purposes of the approval of the project or approval of the assessments sent to the individual landowners.

{¶35} We cannot find error in this analysis. There must be a link between an alleged illegal act and the relief sought. *See Davidson v. Village of Hanging Rock*, 97 Ohio App.3d 723, 734 (4th Dist.1994) (finding that failing to approve minutes in violation of R.C. 121.22 was not substantially linked to relief of invalidating resolution). While the Brennemans argue that it was illegal to backdate the estimated schedule of assessments, they do not argue that the members of the Board illegally backdated the document or ordered that it be backdated. Further, regardless of which date is correct, it is undisputed that the Board had the information that it needed when it deliberated and voted to approve the Wrasman Project. We fail to see how an incorrect time stamp on a document

that the Board had in its possession before it voted on a resolution can be linked to the requested remedy of invalidating that resolution.

{¶36} Further, for the Brennemans to argue that the document was illegally falsified under R.C. 2921.13 in an administrative appeal, they must prove the element of intent. *See State ex rel. Nick Strimbu, Inc. v. Indus. Comm. of Ohio*, 10th Dist. Franklin No. 03AP-71, 2004-Ohio-2991, ¶ 7, *aff'd* 106 Ohio St.3d 173, 2005-Ohio-4386 (finding that R.C. 2921.13 required employer to prove employee intentionally falsified application in administrative appeal of Worker's Compensation claim). "Falsification cannot occur when a person unintentionally makes a false statement." *Hershey v. Edelman*, 187 Ohio App.3d 400, 2010-Ohio-1992, ¶ 30 (10th Dist.). While it is undisputed that the document is backdated, the Brennemans have presented no evidence, or even any argument, that the backdating was intentional. As a result, the Brennemans cannot rely on a claim of falsification in violation of R.C. 2921.13 to invalidate the resolution as illegal.

{¶37} Accordingly, the Brennemans' second assignment of error is overruled.

*Assignment of Error No. III*

{¶38} In their third assignment of error, the Brennemans argue that the Wrasman Project must be vacated because the Board failed to adopt a final schedule of assessments. We disagree.

{¶39} R.C. 1515.24 explains the process of approving a Soil and Water project and levying assessments on landowners who will benefit from the project. R.C. 1515.24(A) states that after receiving the necessary information about a project from Soil and Water, the Board "may adopt a resolution *levying* upon the property within the project area an assessment at a uniform or varied rate * * * as necessary to pay the cost of construction of the improvement not otherwise funded * * *." (Emphasis added.) Landowners can object to this assessment under R.C. 1515.24(D)(1). Once the objections are made, R.C. 1515.24(D)(2) requires that a hearing on the objections occur and that "[u]pon hearing the objectors, the board may adopt a resolution amending and approving the final schedule of assessments and shall enter it in the journal."

{¶40} The trial court found that Resolution #268-12 only informed the affected landowners of an estimated assessment, not a final assessment.

> The statute provides that the Commissioners *shall* make an order approving the levying of the assessment after the *imposition of an assessment* is upheld in the final disposition of an appeal of the imposition of assessments. R.C. 1515.24(D)(4)(3). Since the Commissioners never adopted a resolution that approved a final schedule of assessments and never entered such on its journal, there was never a proper final appealable resolution approving the final schedule of assessments from which plaintiffs could appeal. Since there is no resolution approving a final schedule of assessments from which plaintiffs could appeal, this "issue" is moot.[2]

---

[2] We note that, according to the trial court's analysis, the issue is not moot, but instead is not yet ripe. Mootness occurs when an issue has "no practical significance; hypothetical or academic." *Black's Law Dictionary* 1161 (10th Ed.2014). Ripeness is a requirement that, before a court will adjudicate an issue, the dispute "has reached, but has not passed, the point when the facts have developed sufficiently to permit an

(Emphasis sic.) (Docket No. 37, p. 20).

{¶41} The trial court, in essence, found that the Board's adoption of Resolution #268-12 did not levy the assessments on the landowners, but merely informed the landowners of an estimated assessment for the project; that the objections were to the estimates, and not against assessments that had actually been levied; that because the Board had not actually levied the assessment, R.C. 1515.24 does not apply; and that the Board must actually levy the assessment before there need be any determination as to whether a final schedule of assessment need be adopted.

{¶42} We are somewhat troubled by this analysis. According to the trial court's reasoning, the Board has yet to levy an assessment against the landowners, and has only informed them of an estimate, and the statute has not yet triggered. This makes it unclear whether the Board must pass another resolution to levy the assessment, which would allow the Brennemans and other affected landowners to object and be granted another hearing under the statute, or whether Resolution #268-12 allows the Board to collect the estimated assessment after this court resolves whether the objections were properly overruled, which would affect the

intelligent and useful decision to be made." *Black's Law Dictionary* 1524 (10th Ed.2014). As the trial court found that no assessment had been levied, then there was nothing to finalize under the statute after the hearing, and the controversy was not yet ripe for review.

rights of any landowners who did not object to the notice received from the Board, believing it was only an estimate.

{¶43} However, we need not address that issue, as it deals with the enforceability of collecting the assessment from the landowners. Resolution #421-12 merely overruled objections. There is nothing in the record that indicates that the Board has taken any action to actually collect the assessment from any of the landowners. At a minimum, as stated by the trial court, the Board allowed for a hearing on objections to an estimate and subsequently overruled those objections. We find nothing to support the proposition that, even if the Board needs to adopt a final schedule of assessments under R.C. 1515.24 to *levy* those assessments, failing to do so otherwise invalidates a resolution overruling objections or, indeed, the entire project itself. Any issue as to the enforceability of the estimated assessment is not before this court.

{¶44} Accordingly, we overrule the Brenneman's third assignment of error.

{¶45} Having found no error prejudicial to the Brennemans in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**