[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ames v. Rootstown Twp. Bd. of Trustees*, Slip Opinion No. 2022-Ohio-4605.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4605

AMES, APPELLANT, *v.* ROOTSTOWN TOWNSHIP BOARD OF TRUSTEES, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ames v. Rootstown Twp. Bd. of Trustees*, Slip Opinion No. 2022-Ohio-4605.]**

*Open Meetings Act, R.C. 121.22—When multiple violations of R.C. 121.22 through same conduct are found, a trial court may issue single injunction, and when it does so, it is required to order public body to pay single $500 civil-forfeiture penalty as to all offenses—Court of appeals' judgment affirmed in part and reversed in part and cause remanded for trial court to revise injunction language.*

(No. 2021-0706—Submitted March 9, 2022—Decided December 22, 2022.)

APPEAL from the Court of Appeals for Portage County,

No. 2020-P-0063, 2021-Ohio-1369.

_____

**BRUNNER, J.**

{¶ 1} The Open Meetings Act, R.C. 121.22, requires that all meetings of public bodies be open to the public. Enforcement occurs through private suits, and as remedies for violations, the trial court issues injunctive relief and orders the public body to pay a $500 civil forfeiture as well as the plaintiff's attorney fees and court costs. R.C. 121.22(I). In this appeal, we consider the injunctive and civil-forfeiture remedies a trial court must order when it finds multiple violations of a single provision of R.C. 121.22. For the reasons stated in this opinion, we hold that when multiple violations of R.C. 121.22 through the same conduct are found, the trial court may issue a single injunction, and when it does so, it is required to order the public body to pay a single $500 civil-forfeiture penalty as to all offenses. Having discerned a minor error in the injunction issued by the trial court, we affirm the judgment of the Eleventh District Court of Appeals in part and reverse it in part.

## I. BACKGROUND

### A. The Open Meetings Act

{¶ 2} The Open Meetings Act ("OMA") provides that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). "Public body" is defined as including "[a]ny * * * board, commission, committee, council, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution." R.C. 121.22(B)(1)(a). "Meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2).

{¶ 3} A public body is permitted to hold an executive session—from which members of the public are excluded—only for certain specified purposes. Under R.C. 121.22(G), "the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole

2

purpose of the consideration of" any of the matters identified in eight subparagraphs, R.C. 121.22(G)(1) through (8).

{¶ 4} Relevant here is R.C. 121.22(G)(3), which permits an executive session for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." R.C. 121.22(G)(3). Also relevant is R.C. 121.22(G)(8), which permits an executive session to occur "[t]o consider confidential information related to the marketing plans, specific business strategy, production techniques, trade secrets, or personal financial statements of an applicant for economic development assistance, or to negotiations with other political subdivisions respecting requests for economic development assistance." But R.C. 121.22(G)(8) imposes two conditions on any executive session held under that provision. It requires that the information to be considered be directly related to requests for economic-development assistance under particular provisions of the Revised Code and that the public body vote to determine that the executive session is "necessary to protect the interests of the applicant or the possible investment or expenditure of public funds to be made in connection with the economic development project." R.C. 121.22(G)(8)(a) and (b).

{¶ 5} Once a meeting has concluded, the minutes "shall be promptly prepared, filed, and maintained and shall be open to public inspection." R.C. 121.22(C). "The minutes need only reflect the general subject matter of discussions in executive sessions authorized under [R.C. 121.22(G) or (J)]." *Id.*

{¶ 6} For alleged violations of the statute, the OMA creates a private right of action, such that "[a]ny person may bring an action to enforce" the statute within two years of the alleged or threatened violation. R.C. 121.22(I)(1).

{¶ 7} R.C. 121.22(I) then sets out specific remedies, which are at the center of this appeal:

(1) * * * Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.

(2)(a) If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction * * *.

"Irreparable harm and prejudice to the party that sought the injunction shall be conclusively and irrebuttably presumed upon proof of a violation or threatened violation of this section." R.C. 121.22(I)(3). The section also requires the court to award court costs and reasonable attorney fees. R.C. 121.22(I)(2)(a). Finally, "[a] member of a public body who knowingly violates an injunction issued pursuant to [R.C. 121.22(I)(1)] may be removed from office by an action brought in the court of common pleas for that purpose by the prosecuting attorney or the attorney general." R.C. 121.22(I)(4).

**B. The present suit**

{¶ 8} Appellant, Brian M. Ames, filed an action against appellee, Rootstown Township Board of Trustees, in the Portage County Court of Common Pleas in 2017. He alleged in 16 counts that the board violated the OMA on 16 separate occasions in 2015 and 2016, and he demanded "an injunction to compel the [board] to comply with the requirements of R.C. 121.22 in future meetings" as well as "a civil forfeiture and attorney's fees as provided by law for each count." The trial court granted summary judgment in favor of the board.

{¶ 9} On appeal, the Eleventh District affirmed in part and reversed in part. *Ames v. Rootstown Twp. Bd. of Trustees*, 2019-Ohio-5412, 151 N.E.3d 37 (11th Dist.) ("*Ames I*"). It found that the board did not violate the OMA at two of the

meetings identified in the complaint but that it did violate the OMA at the remaining 14 meetings. Six of the violations occurred at meetings held in 2015; of those violations, five occurred when the board entered into executive session to discuss legal issues with an attorney but in doing so, failed to identify one of the purposes for which an executive session is permitted under R.C. 121.22(G)(1) through (8). At the sixth meeting held in 2015, the board entered into executive session to discuss "employee discipline and pending litigation" but did so without an attorney present, contrary to the requirement of R.C. 121.22(G)(3) for discussions concerning pending litigation. The appellate court also found that the board violated the OMA on eight occasions in 2016 by entering into executive session to discuss economic development at eight separate meetings without satisfying the two conditions set out in R.C. 121.22(G)(8)(a) and (b). The court therefore concluded that summary judgment should have been granted for Ames on these 14 violations. It remanded the matter to the trial court for it to address the proper remedy for those violations.

{¶ 10} On remand, the trial court entered summary judgment in favor of Ames on the eight violations of R.C. 121.22(G)(8) committed in 2016. As a remedy, it enjoined the board from "conducting business in violation of R.C. 121.22(G)(8)(a)" and ordered the board to pay Ames a civil forfeiture of $500, plus $1,000 in attorney fees. It did not address the six violations of R.C. 121.22(G)(8) committed in 2015 and identified in *Ames I*.

{¶ 11} On appeal, the Eleventh District again reversed in part and affirmed in part. 2021-Ohio-1369 ("*Ames II*"). First, it affirmed the trial court's decision to issue one injunction and award one $500 civil forfeiture and $1,000 in attorney fees for the eight violations of R.C. 121.22(G)(8) committed in 2016. It relied on its holding in *Weisbarth v. Geauga Park Dist.*, 11th Dist. Geauga No. 2007-G-2780, 2007-Ohio-6728. In that case, the trial court had found 20 violations of the OMA based on the public body's failure to specify in its meeting minutes the precise

reason why it had entered into executive session at 20 separate meetings. As a remedy for those 20 violations, the trial court issued one injunction and ordered one $500 civil forfeiture. *Id.* at ¶ 4-5. The Eleventh District affirmed in relevant part. It concluded that the violations were "technical" in nature, *id.* at ¶ 27, 30—relating only to the public body's "failure to fully specify its basis for entering executive session"—rather than violations based on formal actions of the public body while in executive session, *id.* at ¶ 30. There was also "no intent to conceal the overall purpose for entering executive session." *Id.* at ¶ 27. The plaintiff was therefore "entitled * * * to only one statutory injunction and one civil forfeiture." *Id.* at ¶ 30.

{¶ 12} In the present case, the Eleventh District reiterated its holding in *Weisbarth*, concluding that "when multiple technical violations are of the same nature, the remedy is one injunction and one $500 civil forfeiture, not $500 per violation. In other words, the violations do not 'stack.' " *Ames II* at ¶ 35. This holding, it concluded, is in line with the overarching purpose of the issuance of an injunction, which is " 'to prevent a future injury, not to redress past wrongs.' " *Id.*, quoting *Lemley v. Stevenson*, 104 Ohio App.3d 126, 136, 661 N.E.2d 237 (6th Dist.1995).

{¶ 13} The Eleventh District also found that the trial court had erred by overlooking the six violations of R.C. 121.22(G) committed in 2015. It therefore remanded the matter to the trial court for it "to issue an injunction or injunctions, consistent with this opinion and *Ames I*, related to the [six violations of R.C. 121.22(G) committed in 2015], and for a determination of the attorney's fees, court costs, and civil forfeitures, if any, to which Mr. Ames is entitled." *Id.* at ¶ 47.

{¶ 14} The trial court subsequently granted summary judgment in favor of Ames with respect to the six violations of the OMA committed in 2015. It issued injunctive relief prohibiting such conduct in the future and ordered the board to pay one $500 civil forfeiture, in addition to the $500 civil forfeiture it had previously ordered the board to pay for the eight violations that occurred in 2016.

{¶ 15} Separately, Ames filed in this court a notice of appeal concerning the decision in *Ames II* on the eight violations committed in 2016. He sought this court's review of two propositions of law. We accepted jurisdiction over the first proposition. *See* 164 Ohio St.3d 1403, 2021-Ohio-2742, 172 N.E.3d 163. That proposition states as follows: "After a plaintiff or relator has proven a violation or violations of the Open Meetings Act by a public body, the duties of a court of common pleas under R.C. 121.22(I) are purely ministerial including the issuing of an injunction for each violation proven." The present appeal concerns only the court of appeals' decision with respect to the eight violations of the OMA committed in 2016.[1]

## II. ANALYSIS

{¶ 16} The interpretation of a statute is a question of law, which we review de novo. *See Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, 160 Ohio St.3d 279, 2020-Ohio-845, 156 N.E.3d 841, ¶ 19. "We primarily seek to determine legislative intent from the plain language of a statute." *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7. "In the absence of a definition of a word or phrase used in a statute, words are to be given their common, ordinary, and accepted meaning." *State v. Black*, 142 Ohio

---

1. The parties have not focused on jurisdiction, but a court has an independent obligation to assure itself of its authority to decide a case. *See State v. Lomax*, 96 Ohio St.3d 318, 2002-Ohio-4453, 774 N.E.2d 249, ¶ 17. The dissenting opinion contends that the court of appeals lacked subject-matter jurisdiction to decide *Ames II* because Ames appealed from an order that was not final and appealable under R.C. 2505.02. We disagree. Even though the appealed order disposed of "fewer than all of [Ames's] claims," Civ.R. 54(B), the trial court expressly stated that its order was final and appealable and certified that there was "[n]o just cause for delay." That certification made the trial court's order final, and therefore appealable, with respect to the claims it did dispose of. *See Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989) (lead opinion). As to those claims, the court's order "affect[ed] a substantial right in an action that in effect determine[d] the action and prevent[ed] a judgment," R.C. 2505.02(B)(1). The trial court informed the parties that its decision with respect to the 2016 claims "ha[d] become final for purposes of appeal," *Pokorny v. Tilby Dev. Co.*, 52 Ohio St.2d 183, 186, 370 N.E.2d 738 (1977), thus notifying Ames to appeal now or never, *see* 10 *Moore's Federal Practice*, Section 54.26 (2022) ("An aggrieved party must appeal a Rule 54(b) judgment within the time permitted * * * and may not seek review of the judgment after the remaining claims have been adjudicated").

St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39. We "read[] all words and phrases in context and in accordance with the rules of grammar and common usage." *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, 179 N.E.3d 1169, ¶ 13. " 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' " *Vanzandt* at ¶ 7, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).

{¶ 17} The statutory language relevant to this appeal is contained in R.C. 121.22(I). R.C. 121.22(I)(1) provides that "[u]pon proof of *a violation or threatened violation of this section* in an action brought by any person, the court of common pleas shall issue *an injunction* to compel the members of the public body to comply with its provisions." (Emphasis added.) R.C. 121.22(I)(2)(a) then provides that "[i]f the court of common pleas issues *an injunction* pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay *a civil forfeiture* of five hundred dollars to the party that sought the injunction." (Emphasis added.)

{¶ 18} Ames argues that R.C. 121.22(I)(1) and (2) are unambiguous and require purely ministerial acts of the trial court with respect to remedies. He contends that R.C. 121.22(I)(1)'s provision on injunctive relief means that there must be an injunction issued as a remedy for every violation. Importantly, despite that contention, he concedes that when multiple violations of the same provision are the same in nature, the trial court need not issue a separate injunction for each violation. What matters, he says, is that injunctive relief is granted to prevent the public body from committing additional violations of that type in the future.

{¶ 19} The board agrees that R.C. 121.22(I)(1) permits a trial court to issue one injunction to address multiple violations of the same provision of the OMA. According to the board, the text requires no more in such circumstances. Because the violations here were "repetitive, identical actions," the board argues, the trial

court properly grouped them together and addressed them in a single injunction. Any additional injunctions against the same act would, in the board's view, be superfluous.

{¶ 20} We agree with the parties that a single injunction may be issued in response to multiple violations of a particular provision of the OMA. As amicus curiae Ohio Attorney General notes, it has long been settled that trial courts have significant discretion when deciding on the terms to be included in an injunction. *See State ex rel. Cleveland v. Eighth Dist. Court of Appeals*, 104 Ohio St. 96, 107-108, 135 N.E. 377 (1922). Moreover, we presume that the General Assembly knows of the state of the common law when it enacts legislation. *Stiner v. Amazon.com, Inc.*, 162 Ohio St.3d 128, 2020-Ohio-4632, 164 N.E.3d 394, ¶ 27; *see In re Bruce S.*, 134 Ohio St.3d 477, 2012-Ohio-5696, 983 N.E.2d 350, ¶ 11. Consequently, while R.C. 121.22(I)(1) requires the trial court to issue "an injunction to compel the members of the public body to comply with [the] provisions" of the OMA, these well-established principles that we have articulated in our caselaw still afford the trial court discretion in crafting that relief.

{¶ 21} In light of this, when a trial court is faced with multiple violations of the OMA, it is required to issue injunctive relief but it has discretion in setting the terms of that relief. A trial court considering multiple violations of the OMA based on the same conduct complies with R.C. 121.22(I)(1) when it issues a single injunction against that conduct as a remedy. In such a situation, issuing a separate injunction for each violation would have no greater effect than a single injunction addressing such violations collectively. By the same token, when a trial court is considering multiple distinct violations of the OMA or violations of more than one of its provisions, the trial court has discretion to enjoin each type of violation separately.

{¶ 22} As for R.C. 121.22(I)(2)(a)'s civil-forfeiture requirement, Ames contends that R.C. 121.22(I)(2)(a) is unambiguous and requires a separate $500

civil forfeiture for each violation. He argues that this requirement furthers the General Assembly's goal of requiring the board to comply with the OMA, as reflected in R.C. 121.22(A), which provides that the OMA "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." Ames also asserts that this goal is reflected in the fact that the OMA provides for enforcement through private suits. *See* R.C. 121.22(I)(1).

{¶ 23} The attorney general concedes that R.C. 121.22(I)(2)(a) does not clearly indicate whether one or more civil forfeitures is appropriate when multiple violations of the same provision of the OMA are proved. But, he argues, a court faced with a statute that is silent or ambiguous on a particular point should adopt the interpretation that furthers, rather than hinders, the purpose the statute appears to be designed to serve. Here, he says, the civil-forfeiture requirement serves two functions: first, because a civil forfeiture is punitive in nature, rather than forward-looking, it serves to deter public bodies from violating the OMA; second, because the recipient of the civil-forfeiture money is the person who brought the suit, the requirement creates an incentive for would-be plaintiffs to bring suit to enforce the OMA. Interpreting R.C. 121.22(I)(2)(a) to require a separate civil forfeiture for every violation would further these two purposes, the attorney general contends, while interpreting the statute to permit only a single civil forfeiture for multiple violations would not meaningfully encourage compliance with the OMA.

{¶ 24} The board argues that the plain text of R.C. 121.22(I)(2)(a) clearly and unambiguously provides that only one civil forfeiture can be awarded in such circumstances. According to the board, this approach to enforcement of the OMA makes sense because only one injunction is necessary to prevent future violations and as a result, only one forfeiture should be awarded. In making this argument,

the board takes the position that the purpose of a civil forfeiture is not to punish the board for past violations but, rather, to deter such violations in the future.

{¶ 25} We agree with the board that only one civil forfeiture is permitted when a single injunction is issued in response to multiple violations of the OMA through the same conduct. The plain text of the statute ties the obligation to order the public body to pay a civil forfeiture to the award of injunctive relief, not to the finding of one or more violations. The statute provides that "[i]f the court of common pleas issues *an injunction* pursuant to division (I)(1) of this section, the court shall order the public body *that it enjoins* to pay *a civil forfeiture of five hundred dollars* to the party that sought the injunction." (Emphasis added.) R.C. 121.22(I)(2)(a). And as explained above, when a public body commits multiple violations of the OMA through the same conduct, only one injunction is needed to order compliance with the OMA in the future. Multiple duplicative injunctions would serve no purpose. It therefore follows that when an injunction is issued in response to a public body's committing multiple violations of the OMA through the same conduct, R.C. 121.22(I)(2)(a) requires the trial court to award a single civil forfeiture of $500.

{¶ 26} Even if we were to conclude that the statute is ambiguous, the result would be the same. The civil-forfeiture requirement appears to serve multiple purposes. A civil forfeiture is punitive in nature and in that sense serves to both punish the public body for violating the OMA and deter future violations. Because the civil forfeiture is given to the person who brings suit and because that person's attorney fees and costs are required to be reimbursed under a different provision of R.C. 121.22(I)(2)(a), the civil-forfeiture requirement also creates an incentive for private litigants to bring suits to enforce the OMA. Therefore, awarding multiple civil forfeitures for multiple repeated violations of the same provision of the OMA would strengthen enforcement of the OMA in *some* cases. But in other cases, it could have a different effect. If civil-forfeiture awards are granted on a per-

violation basis, a person who observes one violation of the OMA may choose to delay bringing suit in the hopes that the public body will commit the same violation at numerous meetings, thereby increasing the potential award to the plaintiff. And that delay could continue for quite some time due to the two-year statute of limitations. As a result, an interpretation of R.C. 121.22(I)(2)(a) that increases the monetary award to the plaintiff the longer the plaintiff delays in bringing suit would both undermine the General Assembly's goal of ensuring compliance with the OMA and provide the plaintiff with an unjustified windfall.

**{¶ 27}** We conclude that when an injunction is issued in response to a public body's committing multiple violations of the OMA through the same conduct, the plain text of R.C. 121.22(I)(2)(a) requires the trial court to order the public body to pay a single civil forfeiture of $500. Such a requirement serves the purposes identified above without creating an incentive for delay and the potential for a windfall.

**{¶ 28}** Given the facts of this case, we see no error in the decision of the court of appeals. Because the board's eight violations of the OMA committed in 2016 were of the same type and based on a failure to comply with R.C. 121.22(G)(8)(a) and (b), the trial court did not err when it addressed those violations through a single injunction and related civil forfeiture. Importantly, however, we do not determine whether multiple violations are of the same type based on whether they are "technical" or "nontechnical" violations. Here, the appellate court's decision in *Ames I* makes clear that it considered the eight violations committed in 2016 as involving the same conduct, 2019-Ohio-5412 at ¶ 70-80, and it concluded in *Ames II* that there was "no indication that the Board was trying to hide the reason for entering into executive session or took improper actions during the executive session," 2021-Ohio-1369 at ¶ 25; *see also Weisbarth*, 2007-Ohio-6728, at ¶ 30, 27 (observing that the violations at issue related only to the public body's "failure to fully specify its basis for entering executive session," not formal actions taken by

the public body during the executive session, and that there was "no intent to conceal the overall purpose for entering executive session").

{¶ 29} As a final matter, Ames also argues that the trial court's injunction fails to comply with R.C. 121.22(I)(1) because it does not identify any specific conduct that is required or prohibited and because it states that it applies only to the board, not to the board's individual members. Ames's argument does not work here. The injunction provides, in its entirety, that "[t]he Defendant, Rootstown Township Board of Trustees, is enjoined from conducting business in violation of R.C. 121.22(G)(8)(a)." The board consists of its members. *See* R.C. 505.01. R.C. 121.22(G)(8) also specifically conditions entrance into executive session on a vote by those members. The trial court's injunction is therefore sufficient to satisfy R.C. 121.22(I)(1)'s requirement that it "compel the members of the public body to comply with" R.C. 121.22(G)(8).

{¶ 30} That said, we observe a need for a minor revision to the trial court's injunction. Because the court found that the board had not complied with the requirements of R.C. 121.22(G)(8)(a) and (b), it is insufficient to merely enjoin business not in compliance with subsection (a) alone, as the court did. Thus, on remand, the trial court should revise the injunction either to refer to both subsections (a) and (b) or to simply refer to R.C. 121.22(G)(8) as a whole.

### III. CONCLUSION

{¶ 31} For these reasons, we hold that when repeated conduct results in multiple violations of a single provision of R.C. 121.22, the trial court may issue a single injunction, and when it does so, it is required to order the public body to pay a single $500 civil-forfeiture penalty as to all offenses. We affirm the judgment of the court of appeals in part and reverse it in part. On remand, the trial court shall revise the injunction either to refer to both subsections (a) and (b) of R.C. 121.22(G)(8) or to simply refer to R.C. 121.22(G)(8) as a whole.

Judgment affirmed in part

and reversed in part<br>and cause remanded.

O'CONNOR, C.J., and DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion.

———————————

**KENNEDY, J., dissenting.**

{¶ 32} This appeal suffers from a fatal flaw: the court of appeals reached its merits even though the trial court's order is not a final, appealable order. The trial court had resolved only 8 of the 16 counts set forth in the complaint. Therefore, the court of appeals lacked subject-matter jurisdiction over the appeal, and its decision reaching the merits is not properly before this court. This determination should end the analysis, but the majority proceeds to address the substance of the appeal, so I do as well.

{¶ 33} The plain and unambiguous language of the Open Meetings Act, R.C. 121.22, provides that for every violation a trial court finds, the court must issue an injunction to prohibit a future violation. And for every injunction issued, the Open Meetings Act requires the trial court to order a civil forfeiture of $500. Nothing in the statutory text affords the trial court discretion to impose one injunction for multiple violations. Consequently, appellant, Brian M. Ames, is entitled to an award of $500 for each occasion appellee, Rootstown Township Board of Trustees, violated the Open Meetings Act.

{¶ 34} Therefore, I would reverse the judgment of the Eleventh District Court of Appeals and would remand this matter to the trial court for the entry of a final, appealable order. Because the majority does otherwise, I dissent.

## I. LAW AND ANALYSIS

### A. *Lack of a Final, Appealable Order*

{¶ 35} Ames filed a 16-count complaint seeking injunctive relief for numerous violations of the Open Meetings Act. The trial court initially entered summary judgment in favor of the board of trustees on all 16 counts. On appeal, the Eleventh District affirmed in part and reversed in part, concluding that Ames was entitled to summary judgment on 14 of the 16 counts. On remand, the trial court entered summary judgment on eight of the counts, but it failed to address the other counts in its entry. On appeal from that order, the court of appeals again affirmed in part and reversed in part, upholding the trial court's decision to issue a single injunction and to order a single civil forfeiture for the eight violations. The court of appeals then remanded the matter to the trial court to address the remaining counts, but Ames appealed the court of appeals' judgment to this court.

{¶ 36} While Ames's appeal was pending here, the trial court ruled on the merits of the remaining violations that had not been addressed in its prior entry.

{¶ 37} Article IV, Section 3(B)(2) of the Ohio Constitution establishes the appellate jurisdiction of the courts of appeals and provides that "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district, except that courts of appeals shall not have jurisdiction to review on direct appeal a judgment that imposes a sentence of death."

{¶ 38} A judgment is defined as " 'a final determination of the rights of the parties in action.' " *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 20, quoting *Priester v. State Foundry Co.*, 172 Ohio St. 28, 30, 173 N.E.2d 136 (1961). "[T]he term 'judgment' comprehends all decrees and final orders rendered by a court of competent jurisdiction and which determine the rights of the parties affected thereby." *Jelm v. Jelm*, 155 Ohio St. 226, 235, 98 N.E.2d 401 (1951). Here, the trial court's decision disposing of some but not all of the counts

set forth in the complaint is not a final determination of the action and therefore not a judgment.

{¶ 39} R.C. 2505.02(B) establishes what constitute "final orders." It makes what would otherwise be interlocutory orders final for purposes of appeal and provides:

An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) [a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

(3) [a]n order that vacates or sets aside a judgment or grants a new trial;

(4) [a]n order that grants or denies a provisional remedy and to which both of the following apply:

(a) [t]he order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) [t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

(5) [a]n order that determines that an action may or may not be maintained as a class action;

(6) [a]n order determining the constitutionality of any changes to the Revised Code made by Am. Sub. S.B. 281 of the

124th general assembly, including the amendment of [certain enumerated sections];

(7) [a]n order in an appropriation proceeding that may be appealed pursuant to division (B)(3) of section 163.09 of the Revised Code.

{¶ 40} Here, the trial court's decision to rule on some but not all of the counts set forth in the complaint does not fit within any of these categories of final orders. The closest two are R.C. 2505.02(B)(1) and (2). R.C. 2505.02(B)(1) does not apply, because the trial court's order does not in effect determine the action and prevent a judgment. "[T]he 'determines the action' language in R.C. 2505.02(B)(1) contemplates a resolution of the 'entire action.' " *Craig* at ¶ 14, quoting *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 14, and *State ex rel. Daniels v. Russo*, 156 Ohio St.3d 143, 2018-Ohio-5194, 123 N.E.3d 1011, ¶ 12. That did not happen here—as the court of appeals explained, it appears that the trial court simply "overlooked" the remaining unresolved counts. 2021-Ohio-1369, ¶ 11.

{¶ 41} Nor does R.C. 2505.02(B)(2) fit, because the trial court's order in this case does not affect a substantial right. "An order affects a substantial right for the purposes of R.C. 2505.02(B)(2) only if an immediate appeal is necessary to protect the right effectively." *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 7. But the impact of the grant or denial of injunctive relief and a civil forfeiture is not "irreversible" in the absence of an immediate appeal. *See id.* at ¶ 7. (And for the same reason, the order does not affect a substantial right under R.C. 2505.02(B)(1).)

{¶ 42} Without a final, appealable order, the court of appeals lacked subject-matter jurisdiction over the appeal. *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 10. "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a

particular class or type of case," *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 14, and it " 'is a "condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void." ' " *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23, quoting *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11, quoting *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). "[I]n the absence of subject-matter jurisdiction, a court lacks the authority to do anything but announce its lack of jurisdiction and dismiss," *Pratts* at ¶ 21.

**{¶ 43}** The majority maintains that the trial court's order was appealable because the court certified that there was "[n]o just cause for delay" under Civ.R. 54(B). However, a civil rule adopted pursuant to our constitutional authority to prescribe rules of practice and procedure in Ohio courts "shall not abridge, enlarge, or modify any substantive right." Article IV, Section 5(B), Ohio Constitution. "It is well established that statutes establishing subject matter jurisdiction * * * are substantive law." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 18. " 'If the statute is jurisdictional, it is a substantive law of this state, and cannot be abridged, enlarged, or modified by the Ohio Rules of Civil Procedure.' " *Id*., quoting *Akron v. Gay*, 47 Ohio St.2d 164, 165-166, 351 N.E.2d 475 (1976). A procedural rule therefore cannot enlarge the jurisdiction of the courts of appeals by expanding the statutory definition of "final order." *See State v. Hughes*, 41 Ohio St.2d 208, 324 N.E.2d 731 (1975), syllabus (invalidating provision of Ohio Rules of Appellate Procedure that purported to enlarge a statutory right of appeal); *State v. Waller*, 47 Ohio St.2d 52, 351 N.E.2d 195 (1976), paragraph one of the syllabus (invalidating provision of Ohio Rules of Criminal Procedure that purported to enlarge a statutory right of appeal).

**{¶ 44}** Consequently, Civ.R. 54(B) cannot vest a court of appeals with jurisdiction that the court does not already have, nor does it purport to. *See* Civ.R.

82 ("These rules shall not be construed to extend or limit the jurisdiction of the courts of this state"). It cannot make an order final and appealable if that order is not already "final" within the meaning of R.C. 2505.02(B). As we have long recognized, "Civ.R. 54(B) * * * is merely a procedural device. It cannot affect the finality of an order." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21, 540 N.E.2d 266 (1989). Any reliance on Civ.R. 54(B) to create a final, appealable order, then, is misplaced.

**{¶ 45}** Therefore, the court of appeals lacked subject-matter jurisdiction to review Ames's appeal as to 8 out of the 16 counts set forth in the complaint. Therefore, the court of appeals' judgment should be reversed, and this matter should be remanded to the trial court to enter a final, appealable order. This court does not need to go any further to resolve this case, but because the majority addresses the substance of Ames's appeal, I also turn to the merits of this case.

*B. The Open Meetings Act*

**1. The Standard of Review**

**{¶ 46}** I agree with the majority that the interpretation of a statute is a question of law that we review de novo. *See Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 23. "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12.

**2. The Plain Meaning of the Open Meetings Act**

**{¶ 47}** The majority suggests, and I agree, that the Open Meetings Act is plain and unambiguous, majority opinion at ¶ 26, but that is the extent of our agreement.

**{¶ 48}** With exceptions not at issue here, the Open Meetings Act provides that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). To compel compliance with its provisions and to remedy violations of them, the Open Meetings Act creates a statutory cause of action. R.C. 121.22(I) provides:

> (1) Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation. Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.
>
> (2)(a) If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction * * *.

**{¶ 49}** The question before this court is whether this language permits a trial court to issue only one injunction and order only one civil forfeiture when the trial court has found multiple violations. The majority answers this question in the affirmative. I disagree.

**{¶ 50}** The answer is found in the plain meaning of the statute's words. R.C. 121.22(I)(1) says that upon proof of *a violation*, the court must issue *an injunction*. According to R.C. 121.22(I)(2), if the court issues *an injunction*, the court must order *a civil forfeiture*. Simple logic dictates that for each violation, there must be a separate injunction imposed and a separate civil forfeiture awarded.

Consequently, if the trial court finds that multiple violations occurred, it must issue multiple injunctions and award multiple civil forfeitures.

{¶ 51} The majority holds differently, concluding that a trial court has discretion to impose a single injunction and order a single civil forfeiture to remedy multiple violations of the Open Meetings Act. How does the majority reach this outcome? It goes beyond the statute's plain language, adds words to the Open Meetings Act's text to support its position, and relies on extrastatutory sources of meaning, dubious claims about the common law of injunctive relief, and its own notions of public policy.

### 3. The Majority Misconstrues the Statute

{¶ 52} As noted above, the majority acknowledges that R.C. 121.22(I)'s language is unambiguous. Majority opinion at ¶ 26. That should end the analysis, and the majority should simply "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). Instead, the majority's analysis relies on canons of statutory interpretation. While the aids to interpretation on which the majority relies—i.e., the state of the common law, the General Assembly's purposes in enacting the legislation, and the consequences of a particular construction—are valid, R.C. 1.49(D), (A), and (C), a court may consider them *only if the statute at issue is ambiguous*. *Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92, ¶ 23 ("We do not look to the canons of statutory construction when the plain language of a statute provides the meaning").

{¶ 53} To compound the problem, the majority adds words to the statute when it indicates that the trial court here was permitted to order only one civil forfeiture for multiple violations because there was " 'no indication that the Board was trying to hide the reason for entering into executive session or took improper actions during the executive session.' " Majority opinion at ¶ 28, quoting 2021-Ohio-1369 at ¶ 25. But such language does not appear in the text of the statute, which says that if there is a violation of the Open Meetings Act, then the trial court

21

must issue an injunction, and that if it issues an injunction, then it must also order a civil forfeiture. "[I]f the General Assembly could have used a particular word in a statute but did not, [this court] will not add that word by judicial fiat." *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 26; *see also Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 20 ("a court may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation").

**{¶ 54}** As this court explained long ago, " '[t]o interpret what is already plain is not interpretation, but legislation, which is not the function of the courts, but of the general assembly.' " *Sears v. Weimer*, 143 Ohio St. 312, 316, 55 N.E.2d 413 (1944), quoting 37 Ohio Jurisprudence, Section 278, at 514. Rather, "[o]ur role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General Assembly." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 29. And here, the plain and unambiguous language of R.C. 121.22(I) required the trial court to issue an injunction for each violation and to award statutory damages for each violation.

**{¶ 55}** To bolster its position, the majority relies on a decision cited by amicus curiae Ohio Attorney General, but that case has no relevance here.

### 4. The Majority's Reliance on a Single 1922 Case Is Misplaced

**{¶ 56}** Instead of simply applying the text of R.C. 121.22(I), the majority is guided by a decision from 1922, *State ex rel. Cleveland v. Eighth Dist. Court of Appeals*, 104 Ohio St. 96, 135 N.E. 377 (1922). That case predated the Open Meetings Act by more than 30 years, *see* Am.H.B. No. 440, 125 Ohio Laws 534, and preceded the enactment of the Open Meetings Act's injunctive-relief provisions by over half a century, *see* Am.Sub.S.B. No. 74, 136 Ohio Laws, Part I, 152, 155. *State ex rel. Cleveland* does discuss the general power of courts to issue injunctions, but it has no relevance here. Yet according to the majority, *State ex rel. Cleveland*

articulates "well-established principles," majority opinion at ¶ 20, that allow a trial court "significant discretion when deciding on the terms to be included in an injunction," *id.* at ¶ 20. But if the language of a statute creates the power to issue an injunction and does not give the trial court discretion in issuing it, where does that discretion come from other than the raw exercise of judicial power? *See, e.g.*, *Doe v. Bolton*, 410 U.S. 179, 222, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (White, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 168 Ohio St.3d 28, 2022-Ohio-342, 195 N.E.3d 974, ¶ 132 (Kennedy and DeWine, JJ., dissenting).

{¶ 57} From *State ex rel. Cleveland*, the majority derives the rule that a trial court "considering multiple violations of the [Open Meetings Act] or violations of more than one of its provisions * * * has discretion to enjoin each type of violation separately" or in a single injunction. Majority opinion at ¶ 20. In that case, this court was not interpreting the Open Meetings Act or some other statute like it that *requires* a trial court to grant injunctive relief in certain circumstances. Because the General Assembly has written a specific injunctive-relief provision applying at law, not equity, *State ex rel. Cleveland* is not controlling or relevant to the resolution of this case. Only the words of the statute are controlling.

{¶ 58} But the majority does not stop there. It pivots from the state of the common law to public policy.

### 5. The Majority's Mistaken Notions of Public Policy

{¶ 59} The majority asserts, "[W]hen a public body commits multiple violations of the [Open Meetings Act] through the same conduct, only one injunction is needed to order compliance with the [Open Meetings Act] in the future. Multiple duplicative injunctions would serve no purpose." Majority opinion at ¶ 25.

{¶ 60} However, " 'a fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch of

government is "the ultimate arbiter of public policy." ' " *Kaminski v. Metal & Wire Prods. Co*., 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 59, quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21.

**{¶ 61}** One might question whether it makes good public policy to permit a claimant to receive multiple civil-forfeiture awards for multiple similar violations of the Open Meetings Act, just as one can question the majority's public-policy decisions that a single civil forfeiture suffices to ensure compliance with the Open Meetings Act's requirements and that additional awards would "provide the plaintiff with an unjustified windfall," majority opinion at ¶ 26. But what cannot be questioned is that our Constitution assigns the task of weighing such competing policy considerations to the General Assembly, not this court.

**{¶ 62}** To resolve the case before us, this court need look no further than the text of the Open Meetings Act. As explained above, the unambiguous language of R.C. 121.22(I) required the trial court to issue an injunction for each violation and to award statutory damages for each violation. Ames was therefore entitled to a separate civil forfeiture of $500 for each occasion the board of trustees violated the Open Meetings Act.

## II. CONCLUSION

**{¶ 63}** For these reasons, the judgment of the court of appeals should be reversed, and this matter should be remanded to the trial court to render a final judgment on all counts set forth in the complaint. Because the majority does otherwise, I dissent.

––––––––––––––––––

The Law Firm of Curt C. Hartman and Curt C. Hartman, for appellant.

Baker, Dublikar, Beck, Wiley & Mathews, James F. Mathews, and Andrea K. Ziarko, for appellee.

Dave Yost, Ohio Attorney General, Benjamin M. Flowers, Solicitor General, and Diane R. Brey, Deputy Solicitor General, urging reversal in part for amicus curiae Ohio Attorney General.

Brosius, Johnson & Griggs, L.L.C., Julia E. Donnan, Jennifer L. Huber, and Peter N. Griggs, urging affirmance for amici curiae Ohio Township Association, Ohio School Board Association, County Commissioners Association of Ohio, Ohio Municipal League, and Coalition of Large Ohio Urban Townships.

_____