[Cite as *Bilton v. Danbury Twp. Bd. of Zoning Appeals*, 2025-Ohio-123.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Eric Bilton, et al.

      Appellants

v.

Danbury Township Board of Zoning
Appeals, et al.

      Appellee

Court of Appeals No.  OT-23-041

Trial Court No.  23 CV 028

**<u>DECISION AND JUDGMENT</u>**

Decided:  January 17, 2025

* * * * *

Thomas J. Connick, for appellants.

Jeffrey M. Stopar, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} In this administrative appeal, appellants, Eric Bilton and Ashley Bilton,

challenge an Ottawa County Court of Common Pleas' judgment that affirmed a decision

by the Danbury Township Board of Zoning Appeals ("BZA") denying their request for an

area variance.  As set forth below, we affirm.

# I. Background

{¶ 2} Appellants own certain real property located at 2991 Waterside Court, in Danbury Township, Ottawa County. The property is part of the Roche Point / Harbor Bay Estates Condominiums. On October 26, 2022, appellants were issued a "Warning of Zoning Violation" by the Danbury Township Zoning & Planning Administrator, Kathryn Dale ("Inspector Dale"). In the warning, the inspector alleged that appellants had installed a "large lanai or screened-in patio" without a permit. The inspector further alleged that the lanai likely failed to comply with the rear-yard setback requirement of 25 feet. Pursuant to Article 4, Section 4.7.2(D) of the Danbury Township Zoning Resolution, "[a]ll condominium/multi-family housing developments shall meet the following requirements: . . . There shall be a required rear yard of not less than twenty-five (25) feet." According to the warning notice, "when the [condominium] unit was constructed, the rear wall was at that 25' requirement." Therefore, "[i]t does not appear that the rear-yard setback requirement will be satisfied with this addition."

{¶ 3} Appellants promptly filed an application for a variance with the Board of Zoning Appeals ("BZA"), requesting a variance from the 25' rear yard setback requirement. Appellants requested a 13' setback to allow for their already-installed lanai.

{¶ 4} An adjudicatory hearing was held before the five-member BZA on December 21, 2022. Inspector Dale and Eric Bilton ("Bilton") testified.

{¶ 5} According to Inspector Dale, appellants' condominium was built in 2019 and it, along with other condominium units, "back up" to a five-acre parcel to the north. The parcel is owned by a conservancy and is protected from future development under a "no-

2.

dig" agreement. Inspector Dale testified that whether appellants' variance is deemed substantial or not "can be debated." On the one hand, it would encroach nearly "halfway into the required setback," from 25 to 13 feet, but on the other hand, "there would be no known negative impact to surrounding. . . properties due the conservation of the property to the north."

{¶ 6} Bilton testified that he and his wife purchased the condominium in 2021 and use it as their "summer home." Bilton said that the need arose for a lanai because he and his family host "multiple families" every weekend in the summer and need the "extra space" for entertaining. Also, without the screening, the backyard is inhospitable in the evenings due to mosquitoes. He testified that, "[s]itting outside in the evenings was a no-go, even with pest-control, like you just didn't want to be out there." So, Bilton "asked around" and hired a contractor, who "had done a number of jobs in Marblehead Estates." According to Bilton, the contractor "[n]ever mentioned any . . . zoning issues." Next, Bilton contacted a sales representative for Marblewood Homes who "asked [Bilton] questions about the project." The record includes a correspondence from the sales representative, indicating that Marblewood Homes Inc. "has approved your request" to construct an 18' by 12' lanai and adding that the lanai "will be beautiful on your lot." With this approval, Bilton "moved forward" with the project, at a cost of $24,324, according to the estimate provided by the contractor. At the hearing, Bilton specifically denied any knowledge of the set-back rule, adding that he "reached out to channels that [he] thought [he] needed to, to get approval."

3.

**{¶ 7}** The BZA denied the variance by a vote of two (in favor) to three (against). In its written decision, dated January 19, 2023, the BZA "did not find a preponderance of reliable, probative and substantial testimony and evidence to support [the] request for the Area Variance to allow for a lanai/screened-in porch on the rear of [appellants'] home to encroach into the rear yard."

**{¶ 8}** Appellants filed an administrative appeal to the Ottawa County Court of Common Pleas, pursuant to R.C. 2506. On December 8, 2023, the lower court affirmed the BZA's decision. Appellants appealed and raise two assignments of error for our review:

> 1. The trial court abused its discretion in determining Appellants' Application for an Area Variance by Appellee related to the property was not arbitrary, capricious, unreasonable and unsupported by a preponderance of substantial, reliable and probative evidence.

> 2. The trial court abused its discretion in determining the findings of fact and conclusions of law submitted in support of the Danbury Township Board of Zoning Appeals support its denial of Appellant's Application for an Area Variance.

## II. Law and Analysis

**{¶ 9}** This case involves a request for an area variance of the township's setback requirement. In deciding whether to grant an area variance, the Ohio Supreme Court has instructed zoning boards to consider the applicant's "practical difficulties." *Kisil v. City*

4.

*of Sandusky,* 12 Ohio St.3d 30, 32-33 (1984); *Duncan v. Village of Mayfield,* 23 Ohio St.3d, 83, 85-86 (1986). The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered "practical difficulties" in the use of his property include, but are not limited to:

> (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance;
>
> (2) whether the variance is substantial;
>
> (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance;
>
> (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage);
>
> (5) whether the property owner purchased the property with knowledge of the zoning restriction;
>
> (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; [and]
>
> (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Id.* at syllabus; *see also* Section 7.9(2)(C)(i)(a)-(g) of the Danbury Township Zoning Resolution (Incorporating *Duncan* factors). In weighing those factors, no single factor is dispositive or controlling. *Duncan* at 86. And, a BZA may deny a variance "even if some factors weigh in favor of the property owner." *Barry v. City of Bay Village,* 2017-Ohio-7244, ¶ 21 (8th Dist.), citing *Phillips v. Westlake Bd. of Zoning Appeals,* 2009-Ohio-2489, ¶ 21 (8th Dist.).

5.

**{¶ 10}** In an appeal of an administrative decision, the common pleas court considers the "'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). The common pleas court "should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative, and substantial evidence to support the board's decision." *Kisil* at 34.

**{¶ 11}** On further appeal to this court, our review is "more limited in scope and requires [us] to affirm the common pleas court, unless [we] find[], as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence." *Id.* at 34, fn. 4. "Within the ambit of 'question of law' for appellate court review would be abuse of discretion by the common pleas court." *Id.* "Thus, this court will review the judgment of the trial court only to determine if the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence." *Barry* at ¶ 17, citing *Wolstein v. Pepper Pike City Council*, 2004-Ohio-361, ¶ 21–22 (8th Dist.). "The term "abuse of discretion' . . . implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

6.

**A.** **The trial court did not abuse its discretion in finding that the BZA's decision was supported by a preponderance of reliable, probative, and substantial evidence.**

{¶ 12} In their second assignment of error, which we address first, appellants argue that the trial court abused its discretion in determining that the BZA's findings were supported by a preponderance of reliable, probative, and substantial evidence.

{¶ 13} In its decision, the BZA addressed all seven *Duncan* factors and made the following findings of fact:

> (1) The property in question **will** yield a reasonable return and **can** be used beneficially without the variance <u>because the property can continue to be used for a single-family condominium residence</u>.

> (2) The request is substantial <u>because the addition would be encroaching half-way into the required setback established for this whole phase of development</u>.

> (3) The essential character of the neighborhood **would not** be substantially altered by the variance and adjoining properties **would not** suffer a substantial detriment as a result of the variance <u>because the property backs up onto property under a conservancy ownership, under a "no-dig" agreement</u>.

> (4) There is **no** indication the variance would adversely affect the delivery of governmental services (i.e. water, sewer, garbage, etc.) <u>because all utilities are available to the property and existing</u>.

> (5) The property owner states they **were not** aware of the zoning restrictions at the time they purchased the property.

> (6) The property owner's predicament **can** feasibly be obviated through some method other than a variance <u>by removing the lanai/screened-in porch, but due to where the building has been placed, any roofed-over improvements to this unit or future units will need a variance from this north property line</u>.

7.

(7) The spirit and intent behind the zoning requirement **would be** observed and substantial justice done by granting the variance <u>because there is no known negative impact on adjoining properties</u>.

(Emphasis in original.)  *BZA Motion & Findings of Fact*, Jan. 18, 2023.

{¶ 14} On appeal, the common pleas court found that the BZA's findings were "supported by the testimony" and that the decision to deny the application was "not illegal, arbitrary, capricious, unreasonable or unsupported by a preponderance of substantial, reliable and probative evidence."

{¶ 15} On further appeal, appellants complain that the BZA "only" found that three of the seven *Duncan* factors weighed against granting a variance *and* that the court's findings, as to those three factors, were not supported by the evidence.  We respond to appellants' arguments, while remaining "mindful of our limited review that precludes this court from reweighing the evidence."  *Snyder v. Leroy Twp. Bd. of Zoning Appeals*, 2024-Ohio-1856, ¶ 16 (11th Dist.).

{¶ 16} As to the first *Duncan* factor—regarding whether there can be any beneficial use of the property without the variance—appellants argue that the BZA offered "no evidence" to refute Bilton's testimony that appellants "required extra space for their living requirements" and the fact that their "use and benefit of their backyard" will be impaired without the lanai.  While appellants argue that *their* plans cannot be accomplished without the variance, *Duncan* asks whether "there can be *any* beneficial use of the property without the variance[.]"  (Emphasis added.)  *Duncan* at syllabus.  *See, e.g. Mills v. Walnut Township Board of Zoning Appeals,* 2023-Ohio-4234, ¶ 15 (4th Dist.)

8.

(Although property owner's plan could not be accomplished without the variance, the BZA presented evidence that the property could be sold for a profit or otherwise used in a beneficial manner and therefore the lower court's decision upholding the denial of the variance was supported by the evidence.). Here, it is undisputed that the property may continue to be used for a single-family condominium, without the variance. Therefore, we find that the record evidence supports the BZA decision as to the first *Duncan* factor.

{¶ 17} Next, appellants argue that the BZA's finding under the second *Duncan* factor—that the variance is substantial—is "contradictory" and "incongruent" with its other finding, as to the third *Duncan* factor, in which the BZA found that that the "essential character of the neighborhood" will not be substantially altered by the variance. Appellants cite the absence of any complaint by the conservancy and the fact that conservancy's property cannot be developed as evidence that the variance is not "substantial." First, we see nothing contradictory by the BZA's findings as to these distinct criteria, i.e. substantiality versus the essential character of the neighborhood. Further, it is generally accepted that a setback variance greater than 25 percent is typically deemed to be "substantial." *See, e.g., Salotto v. Wickliffe Bd of Zoning Appeals,* 2011-Ohio-1715, ¶ 24 (11th Dist.) ("In considering the second of the seven *Duncan* factors in previous zoning appeals, this court has indicated that a 25 percent deviation, or higher, must be deemed substantial in nature."). Here, appellants seek a setback variance of nearly 50%, from 25 feet to 13 feet. Under such circumstances, it cannot be disputed

9.

that the deviation sought by appellants is "very substantial." *Id.* Therefore, we find evidence supporting the BZA's finding with regard to the second *Duncan* factor.

{¶ 18} Next, appellants challenge the BZA's finding as to the sixth *Duncan* factor, which considers whether the issue necessitating the variance can be obviated through a method other than a variance. Appellants insist that "the only way to 'feasibly obviate' the lanai is to raze it at great economic cost to [them]." They complain that the BZA "completely ignored" the $25,000 cost to build the structure, the added cost of razing it and the diminution in value of the property if the lanai is removed. However, an owner's ignorance of the controlling area regulations "is not a factor that would weigh in favor of a finding of practical difficulties." *Salotto* at ¶ 26, citing *Roberts v. Lordstown,* 1998 WL 553625, *14 (11th Dist. July 10, 1998). Therefore, regardless of whether appellants already spent considerable funds to improve the value of their property, they cannot cite their own failure to follow the necessary procedure as a justification for the area variance. *Id.*

{¶ 19} Appellants also highlight findings by the BZA that *favor* their case for a variance. Upon review, we find that the record confirms the trial court's findings on those points as well. That is, evidence was presented at hearing that the granting of the variance request would not substantially alter the character of the surrounding neighborhood or harm the separate interests of the adjoining property owners (the third *Duncan* factor); that there is no indication that the variance would adversely affect the delivery of governmental services (the fourth *Duncan* factor); that appellants were

10.

unaware of the zoning restrictions at the time of purchase (the fifth *Duncan* factor); and that there is no known negative impact on the adjoining properties (the seventh *Duncan* factor). However, as discussed, a variance may be denied even if some factors weigh in favor of the property owner. *Barry* at ¶ 21. Moreover, the trial court is not required to apply the *Duncan* factors mathematically. *Winfield v. Painesville*, 2005-Ohio-3778, ¶ 28 (11th Dist.).

{¶ 20} Upon considering the records of the proceedings at the administrative and trial levels, we find that the trial court did not abuse its discretion in concluding that the BZA's findings were supported by a preponderance of substantial, reliable and probative evidence. Because the trial court did not err in holding that appellants had not satisfied the "practical difficulties" standard for an area variance, their second assignment of error is not well-taken.

**B.** **The trial court did not abuse its discretion in not finding that the BZA denied the variance based upon impermissible factors**.

{¶ 21} In their first assignment of error, appellants argue that the BZA impermissibly considered deterrence as the "sole[]" factor in denying the variance, rather than focusing on the "key question under *Duncan*," i.e. whether the variance, as applied to appellants, is reasonable.

{¶ 22} In support of their claim, appellants cite comments made at the hearing by two BZA members who voted against the variance. During the exchange, one member asked, "[i]s it our place to give the people who gave [appellants] the wrong information an education or do we let it go until something else comes up?" Appellants surmise that

11.

when the BZA member asked whether they should "give the people . . . an education," he was signaling his intention to vote against the variance to teach "third parties" a "lesson." We find appellants' theory to be speculative, at best. Moreover, appellants neglect to include in their brief the inspector's testimony on this point. She responded to the query posed by the BZA member, i.e. whether the BZA should "educate" those who misinformed appellants. The inspector testified that she believed the contractor "knows he missed a step," by failing to apply for a permit because, since installing appellants' lanai, the contractor had "reached out" to her on a different matter. Thus, the inspector's testimony establishes that the contractor had already been made aware of the permitting process. We find no evidence to support appellants' claim that the BZA "punished" them as a means of encouraging others to comply with the permitting process.

{¶ 23} Finally, appellants refer to another case before the BZA with "strikingly similar" facts, except in the other case, the BZA voted to approve the variance. Appellants claim that the "only notable difference" between the two cases is that, in the other case, the BZA "did not have a third party they were targeting to educate and deter."

{¶ 24} R.C. 2506.03 provides a mechanism by which a party may introduce new or additional evidence into the record, and the statute is to be "liberally" construed in favor of admission. *Primus v. Ohio Dep't of Job & Fam. Serv.,* 2003-Ohio-5704, ¶ 15 (11th Dist.), citing *State ex rel. Chagrin Falls v. Geauga Co. Bd. of Commrs.*, 96 Ohio St.3d 400, 403 (2002). Here, appellants could have, but did not, introduce evidence regarding other matters before the BZA, and it may not do so now. It is well-established

12.

law that a reviewing court cannot consider evidence outside the record on appeal. *In re Estate of Zeak*, 2022-Ohio-951, ¶ 21 (10th Dist.). Therefore, we do not consider appellants' argument, as the issue is not properly before us. For all these reasons, we find appellants' first assignment of error not well-taken.

### III. Conclusion

{¶ 25} We overrule both of appellants' assignments of error. Accordingly, the judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.            _____
                                                 JUDGE
Myron C. Duhart, J.         

                                      _____
Charles E. Sulek, P.J.                                      JUDGE
CONCUR.

                                      _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.