[Cite as *State ex rel. Pelmear v. Henry Cty. Land Reutilization Corp.*, 2025-Ohio-4998.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO, EX REL.,
DOUGLAS A. PELMEAR,

      RELATOR-APPELLANT,

  v.

HENRY COUNTY LAND
REUTILIZATION CORP., ET AL.,

      RESPONDENTS-APPELLEES.

CASE NO. 7-25-05

OPINION AND
JUDGMENT ENTRY

Appeal from Henry County Common Pleas Court
Trial Court No. 24CV003

Judgment Affirmed

Date of Decision:  November 3, 2025

APPEARANCES:

    *Douglas Alan Pelmear,* **Appellant**

    *Katie Nelson* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Relator-appellant, Douglas A. Pelmear ("Pelmear"), pro se, appeals the April 18, 2025 judgment of the Henry County Court of Common Pleas granting judgment in favor of respondents-appellees, the Henry Count Land Reutilization Corporation ("Land Bank") and, in their official capacities as members of the Land Bank, Diana Wachtman ("Wachtman"), Robert Hastedt ("Hastedt"), Glenn Miller ("Miller"), Doug Prigge ("D. Prigge"), and Andrew Small ("Small") (collectively, "Respondents"). For the reasons that follow, we affirm.

{¶2} Pelmear's specific interest in this case stems from an alleged financial lien that he claimed to have held against a property owned by Matthew T. Prigge ("M. Prigge") that was the subject of a foreclosure action. He alleges the Henry County Prosecutor's Office and the Land Bank prevented him from enforcing his claimed lien by having the Land Bank accept a deed in lieu of foreclosure for the property on January 5, 2022. Pelmear contends the Land Bank's acceptance of the deed was an invalid act because it was not authorized by any public resolution or meeting record, thus violating Ohio's Open Meetings Act ("OMA").[1]

---

[1] R.C. 121.22 does not authorize a private individual to bring an action to enforce the Open Meetings Act on behalf of the State. *See State ex rel. Ames v. Geauga Cty. Bd. of Dev. Disabilities*, 2024-Ohio-5441, ¶ 28 (11th Dist.). Here, while the trial court expressed concern regarding Pelmear's standing to bring this action on behalf of the State, it ultimately did not decide the issue. Because the issue was not raised by the parties on appeal, we are proceeding with this appeal by assuming without deciding that Pelmear has proper standing to bring this action.

{¶3} Consequently, on January 4, 2024, Pelmear filed a complaint in the trial court seeking injunctive relief against the Land Bank. His single-count complaint alleged that the Land Bank violated the OMA by failing to provide proper public notice for twelve meetings of the Land Bank in 2022 and 2023. Pelmear requested that the trial court invalidate any actions taken by the Land Bank at these meetings in addition to statutory damages, attorney fees, and court costs. The Respondents filed their answer on February 5, 2024.

{¶4} The case's procedural path was complicated by Pelmear's related filings in the Supreme Court of Ohio. Specifically, on February 26, 2024, Pelmear filed a writ seeking to disqualify the Henry County Prosecutor's Office from representing the Respondents. As a result, on March 14, 2024, the trial court ordered the Respondents to halt its response to discovery until the Supreme Court ruled on the matter. Thereafter, Pelmear filed a separate motion on April 23, 2024 to disqualify the trial judge. While both matters were pending, Pelmear scheduled depositions for Prigge, Miller, Small, Hastedt, Wachtman, and the corporate representative of the Land Bank (to occur on May 8, 2024), prompting the trial court to stay the case on May 1, 2024.[2] Ultimately, on May 16, 2024, the Supreme Court denied Pelmear's motion to disqualify the trial judge, and, on May 22, 2024, it dismissed his writ seeking to disqualify the prosecutor's office.

---

[2] Despite the trial court's order staying the case, Pelmear proceeded with the scheduled depositions, but the Respondents did not appear.

{¶5} After the Supreme Court disposed of his filings, Pelmear filed a motion on May 28, 2024 requesting that the trial court compel discovery and impose sanctions on the Respondents. In his motion, Pelmear argued that the Respondents failed to provide the required initial disclosures under Civ.R. 26 and that its representatives refused to appear for their depositions that were scheduled for May 8, 2024. As a result, Pelmear requested that the trial court order the Respondents to participate in discovery and to pay him $1,472.00 in sanctions for the costs that he incurred from the missed depositions. The Respondents filed a memorandum in opposition to Pelmear's motion on June 11, 2024, arguing that the motion should be denied because the trial court had stayed the case and separately ordered them not to respond to discovery until the Supreme Court resolved the writ and the motion for disqualification. The Respondents also countered that Pelmear's discovery requests were improper under Civ.R. 26. Pelmear filed his reply on June 13, 2024.

{¶6} On July 8, 2024, the trial court denied Pelmear's motion to compel and for sanctions after determining that the discovery delays were reasonable in light of Pelmear's multiple filings with the Supreme Court. In the same entry, the trial court established new discovery deadlines, ordering the Respondents to provide their initial disclosures as required by Civ.R. 26(B)(3) by July 31, 2024, and for all written discovery to be completed by September 30, 2024. On July 31, 2024, the Respondents certified that they served their initial disclosures on Pelmear as required by Civ.R. 26(B)(3).

{¶7} The Respondents filed a motion for summary judgment on November 27, 2024. On December 26, 2024, Pelmear filed a motion to strike the Respondents' motion for summary judgment or, in the alternative, a memorandum in opposition to the Respondents' motion for summary judgment and a request for sanctions. Pelmear filed a motion for judgment on the pleadings under Civ.R. 12(C) that same day. The Respondents filed their reply in support of their motion for summary judgment on January 2, 2025 and a memorandum in opposition to Pelmear's Civ.R. 12(C) motion on January 9, 2025 (to which Pelmear filed a motion to strike the next day). Following a hearing on January 9, 2025, the trial court on January 22, 2025 denied Pelmear's motions to strike the filings of the Respondents, Pelmear's motions for sanctions, Pelmear's Civ.R. 12(C) motion, and the Respondents' motion for summary judgment.

{¶8} On February 10, 2025, Pelmear filed a motion in limine requesting that the trial court preclude any and all testimony from the Land Bank or its representatives at the upcoming trial. He argued this sanction was necessary because they failed to attend their depositions or provide discovery as required by Civ.R. 26(B) by the discovery deadline. In his motion, Pelmear also renewed his request for $1,472.00 in sanctions for the missed depositions.

{¶9} The case proceeded to trial on February 14, 2025. Prior to trial, the trial court requested Pelmear to specify the evidence that he was seeking to exclude with his motion in limine. Because his response was unclear and non-specific, the trial

court denied Pelmear's motion and renewed request for sanctions. However, when the Respondents introduced their Exhibits A and B during trial, Pelmear objected, arguing that they should be excluded for not being produced during discovery. The trial court overruled his objection after finding that Pelmear never served the Respondents with a formal written request for the production of documents as required by Civ.R. 34. Notably, the trial court indicated it was applying this standard to both sides, stating it would have also overruled a similar objection if the Respondents had raised one against Pelmear's exhibits.

{¶10} On April 18, 2025, the trial court entered judgment in favor of the Respondents, but its substantive analysis applied only to the Land Bank. Specifically, the court concluded that Pelmear's complaint failed to allege any specific wrongdoing against the individually named members of the Land Bank and determined that it would therefore not address any claims against them. Regarding the Land Bank, the trial court concluded that Pelmear failed to meet his burden of proving a violation of the OMA's public notice requirement. In particular, the trial court found that Pelmear presented insufficient evidence that meetings occurred on 3 of the 12 dates that he alleged. For the remaining 9 meetings, the trial court relied on the Land Bank's code of regulations—admitted at trial as Defendant's Exhibit B—to conclude that a reasonable notice policy was in place and to determine that Pelmear failed to present evidence that this policy was not followed.

{¶11} Pelmear filed his notice of appeal on April 21, 2025. He raises three assignments of error for our review. For ease of our discussion, we will begin by addressing Pelmear's first assignment of error, then his second and third assignments of error together.

**First Assignment of Error**

**The trial court abused its discretion by allowing Respondent to introduce evidence that was in violation of Civ.R. 26 and court orders compelling compliance with discovery. This failure constituted undue surprise and prejudiced Relator and the outcome of the case.**

{¶12} In his first assignment of error, Pelmear argues that the trial court erred by permitting the Respondents to introduce exhibits at trial that had not been disclosed during discovery in violation of Civ.R. 26. In particular, he contends this failure created undue surprise that was prejudicial because it deprived him of the ability to fairly respond to the evidence and ultimately changed the outcome of the case.

*Standard of Review*

{¶13} "A trial court has broad discretion when imposing discovery sanctions and a reviewing court shall review these rulings only for an abuse of discretion." *Collias v. Redburn*, 2012-Ohio-2128, ¶ 25 (3d Dist.). *See also Simpson v. Kuchipudi*, 2006-Ohio-5163, ¶ 9 (3d Dist.) (recognizing that this court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion). An

abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} "'Although the decision to impose discovery sanctions is a matter within the sound discretion of the trial court, "the exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise."'" *Long v. Harding*, 2021-Ohio-4240, ¶ 35 (12th Dist.), quoting *Grady v. Charles Kalinsky, D.D.S., Inc.*, 2005-Ohio-5550, ¶ 14 (8th Dist.), quoting *Nickey v. Brown*, 7 Ohio App.3d 32, 34 (9th Dist. 1982).

*Analysis*

{¶15} A key purpose of the Rules of Civil Procedure is to prevent surprises at trial by ensuring a free flow of information between the parties. *Hanick v. Ferrara*, 2020-Ohio-5019, ¶ 29 (7th Dist.). To achieve this, the discovery process requires parties to share information upon request and imposes sanctions for failing to respond to reasonable inquiries. *Id.*

{¶16} "Civ.R. 26 sets forth general provisions governing discovery." *Long* at ¶ 36. To that end, Civ.R. 26(B)(1) provides that parties may generally

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within

this scope of discovery need not be admissible in evidence to be discoverable.

Under Civil Rule 26(B)(3), both sides in a lawsuit must automatically provide each other with basic, essential information at the start of the case. In particular, the rule provides, in its relevant part, that the parties must,

> [w]ithout awaiting a discovery request, . . . provide to the other parties, except as exempted by Civ. R. 26(B)(3)(b) or as otherwise stipulated, or ordered by the court:
>
> (i) the name and, if known, the address, telephone number, and e-mail address of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Civ.R. 26(B)(3)(a)(i), (ii). *See In re Estate of Carte v. Bringardner*, 2023-Ohio-4286, ¶ 75 (10th Dist.).

{¶17} Pursuant to Civ.R. 34(C), and subject to the scope of discovery under Civ.R. 26(B), a party seeking materials—*beyond* the automatic initial disclosures mandated by Civ.R. 26(B)(3)—may serve on another party a request to produce designated materials that are in the possession, custody, or control of the party receiving the request. *See Buckner v. Washington Mut. Bank*, 2014-Ohio-5189, ¶ 24 (12th Dist.). Critically, "[t]he Ohio Rules of Civil Procedure clearly state that

Rule 34 requests are the only means by which discovery of documents from a party may be had." *Gibson-Myers & Assoc., Inc. v. Pearce*, 1999 WL 980562, *3 (9th Dist. Oct. 27, 1999), citing Civ.R. 45(A)(1)(c) (noting that "documents may be obtained from a party in discovery only pursuant to Civ.R. 34"). "If the party upon whom the request is served fails to answer the request for inspection, then Civ.R. 37(A)(2) allows the requesting party to move for an order to compel discovery." *Id.*

{¶18} "Civ.R. 37 vests courts with the authority to sanction parties and their attorneys for flouting the Rules of Civil Procedure and violating discovery orders . . . ." *Bellamy v. Montgomery*, 2010-Ohio-2724, ¶ 21 (10th Dist.). *See also Elliott-Thomas v. Smith*, 2018-Ohio-1783, ¶ 16 ("Civ.R. 37 provides trial courts with broad discretion to impose sanctions upon a party who violates the rules governing the discovery process."). "The failure to provide discovery material under an order may result in the court prohibiting a designated matter from being introduced into evidence." *Hanick*, 2020-Ohio-5019, at ¶ 28 (7th Dist.), citing Civ.R. 37(B)(1)(b).

{¶19} "When imposing a discovery sanction, the trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *Black v. Hicks*, 2020-Ohio-3976, ¶ 55 (8th Dist.). *See also Elliott-Thomas* at ¶ 16 (noting that the civil rules provide "adequate remedies to deter and punish interference with and concealment of evidence by parties and counsel"). "When issuing discovery sanctions, the Ohio Supreme Court has held that 'the trial court should weigh the conduct of the party offering [evidence] along with the level of

prejudice suffered by the opposing party attributable to the discovery violation, in order to determine the appropriate sanction.'" *Black* at ¶ 55, quoting *Savage v. Correlated Health Servs.*, 64 Ohio St.3d 42, 55 (1992). "And, because the exclusion of reliable and probative evidence is such a severe sanction, it should only be imposed when necessary to enforce willful noncompliance or to prevent unfair surprise." *Id.*

{¶20} Based on our review of the record before us, we conclude that the trial court did not abuse its discretion by overruling Pelmear's objection and by admitting the Respondents' Exhibits A and B because there is no evidence in the record that Pelmear ever complied with Civ.R. 34 by filing any written request for the production of documents. *See Gibson-Myers*, 1999 WL 980562, at *4. Indeed, the record is clear that, while the Respondents served their initial disclosures on July 31, 2024, Pelmear never served the Respondents with a written request for the production of documents under Civ.R. 34. *Compare id.* at *4, fn. 2 (acknowledging that "[w]hile Civ.R. 30(B)(4) allows a Civ.R.34 request to accompany a notice of deposition, no such request was clearly set forth in Appellee's notice"). Without such a request, the Respondents had no duty to produce the specific exhibits they intended to use at trial. *See Disciplinary Counsel v. Hunter*, 2023-Ohio-4168, ¶ 19 (noting that "there is no evidence in the record to demonstrate that Hunter requested discovery or filed a formal request for the production of documents pursuant to

Civ.R. 34 or that she filed a motion for an order to compel discovery pursuant to Civ.R. 37").

**{¶21}** Nevertheless, Pelmear contends that he requested the documents in writing. However, the record reveals that this request was an informal email, not a formal request for production served in accordance with the Civil Rules. (*See* Jan. 9, 2025 Tr. at 6). Indeed, an informal email is not a substitute for the procedures mandated by the rules and does not trigger an opposing party's duty to respond. *See Bilton v. Danbury Twp. Bd. of Zoning Appeals*, 2025-Ohio-123, ¶ 24 (6th Dist.) ("It is well-established law that a reviewing court cannot consider evidence outside the record on appeal."); *State v. Vore*, 2021-Ohio-185 (4th Dist.) (noting that an appellant court "may not consider these emails as we would be relying on information outside the record which we are not permitted to do"). Because Pelmear failed to use the proper procedural tools to obtain the documents, the trial court did not abuse its discretion by denying Pelmear's objection to the Respondents' reliance on the Respondents' Exhibit A or B or by admitting those exhibits at trial.

**{¶22}** Pelmear's first assignment of error is overruled.

**Second Assignment of Error**

**The trial court erred in failing to issue an injunction pursuant to overwhelming evidence of violation of R.C. 121.22(F).**

**Third Assignment of Error**

**The trial court erred in failing to issue an injunction pursuant to R.C. 121.22(I)(1) as required after Relator proved by clear and**

-12-

**convincing evidence of any violation of the Open Meetings Act contained in Relator's Complaint.**

{¶23} In his second and third assignments of error, Pelmear argues that the trial court erred by failing to issue an injunction because he presented overwhelming evidence that the Land Bank violated the OMA by failing to provide adequate public notice for 12 of its meetings. In particular, he contends that, because he proved these notice violations, the trial court had a non-discretionary, mandatory duty under R.C. 121.22(I)(1) to issue the injunction.

*Standard of Review*

{¶24} In general, "[t]he decision to grant or deny an injunction is within the discretion of the trial court, and we review that decision on appeal for an abuse of discretion." *Gimex Properties Corp. v. Reed*, 2022-Ohio-4771, ¶ 59 (6th Dist.), citing *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590 (1995), paragraph three of the syllabus. *See also Ames v. Rootstown Twp. Bd. of Trustees*, 2022-Ohio-4605, ¶ 21 (explaining that "when a trial court is faced with multiple violations of the OMA, it is required to issue injunctive relief [under R.C. 121.22(I)(1)] but it has discretion in setting the terms of that relief"). Again, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶25}** Ohio's OMA ensures government transparency, providing that "'[a]ll meetings of any public body are declared to be public meetings open to the public at all times.'" *Ames* at ¶ 2, quoting R.C. 121.22(C). *See also Keystone Commt. v. Switzerland of Ohio Sch. Dist. Bd. of Edn.*, 2016-Ohio-4663, ¶ 24 (7th Dist.) ("R.C. 121.22 requires public bodies in Ohio to take official action and conduct all deliberations on official business only in open meetings where the public can attend and observe such deliberations."). The OMA "'is to be liberally construed to require a public body at all times to take official action and conduct deliberations upon official business in meetings open to the public.'" *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 2009-Ohio-6993, ¶ 64 (10th Dist.), quoting R.C. 121.22(A). "'Its purpose is to assure accountability of elected officials by prohibiting their secret deliberations on public issues.'" *Id.*, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty. Commrs.*, 2002 WL 727023, *1 (Apr. 26, 2002 1st Dist.).

**{¶26}** The OMA defines a "public body" to include "'[a]ny . . . board, commission, committee, council, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution.'" *Ames* at ¶ 2, quoting R.C. 121.22(B)(1)(a). The parties agree that the Land Bank is a public body under the OMA.

{¶27} Under the OMA, a "meeting" is any prearranged discussion of public business by a majority of a public body's members. R.C. 121.22(B)(2). The OMA authorizes different types of meetings, including regular, special, and emergency meetings, and requires public bodies to establish a reasonable method for the public to determine the time and place for each. *Keystone* at ¶ 24; *State ex rel. Masiella v. Brimfield Twp. Bd. of Trustees*, 2017-Ohio-2934, ¶ 47 (11th Dist.); R.C. 121.22(F). For special meetings in particular, the body must also state the specific purpose of the meeting and provide at least 24 hours' advance notice. *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, 2024-Ohio-379, ¶ 48; R.C. 121.22(F).

{¶28} "Public officials may discuss certain sensitive information in a private executive session from which the public is excluded, if particular procedures are followed." *State ex rel. Young v. Bd. of Edn. Lebanon School Dist.*, 2013-Ohio-1111, ¶ 48 (12th Dist.); R.C. 121.22(G). In particular, "[a]n executive session is a closed-door conference convened by a public body, after a roll call vote, that is attended by only the members of the public body (and those they invite), that excludes the public." *Keystone* at ¶ 25. "The [OMA] allows for executive sessions for only certain limited purposes, and those are to be strictly construed." *Id.* Specifically, "[a] public body may only discuss the matters specifically enumerated in R.C. 121.22(G) during executive session." *Id.* And, "[f]inally, a public body may not take any formal action, such as voting or reaching any collective decision,

during an executive session and any formal action taken in an executive session is invalid." *Id.*

**{¶29}** "Once a meeting has concluded, the minutes 'shall be promptly prepared, filed, and maintained and shall be open to public inspection.'" *Ames* at ¶ 5, quoting R.C. 121.22(C). However, the minutes for an executive session are only required to reflect the general subject matter of the discussion by stating the legally permitted purpose for which the session was held. *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 17.

**{¶30}** The OMA sets out specific, non-discretionary remedies that a court must impose upon *proof* of a violation. *Ames* at ¶ 7. Central to this appeal, the statute requires that a court "shall issue an injunction" to force the public body to comply with the law. R.C. 121.22(I)(1). *See id.* at ¶ 20 ("'[W]hile R.C. 121.22(I)(1) requires the trial court to issue 'an injunction to compel the members of the public body to comply with [the] provisions' of the OMA, these well-established principles that we have articulated in our caselaw still afford the trial court discretion in crafting that relief."), quoting R.C. 121.22(I)(1). Upon proof of a violation or a threatened violation, irreparable harm and prejudice to the party seeking the injunction are automatically presumed, making the case for an injunction conclusive and irrebuttable. R.C. 121.22(I)(3).

**{¶31}** If an injunction is issued, the court must also order the public body to pay a $500 civil forfeiture, court costs, and reasonable attorney fees to the party who brought the lawsuit. R.C. 121.22(I)(2)(a). Finally, any member of a public body who knowingly violates the court's injunction may be removed from office in a separate action. R.C. 121.22(I)(4).

**{¶32}** "Plaintiffs alleging violations of Ohio's OMA, R.C. 121.22, bear the burden of proving the violations they have alleged." *Hicks*, 2022-Ohio-4237, at ¶ 40. *See also Keystone*, 2016-Ohio-4663, at ¶ 26 (7th Dist.) ("A party seeking injunctive relief has the burden of proof by clear and convincing evidence."). "Therefore, the party alleging a violation of the [OMA] must establish that the public body held a meeting with a majority of its members and that the meeting improperly excluded the public." *Keystone* at ¶ 26. "There is no requirement for the public body to conversely prove that no violation occurred." *Hicks* at ¶ 11.

**{¶33}** Importantly, under a legal principle known as the "presumption of regularity," Ohio law presumes that public officials and government boards have performed their duties properly and legally. *Brenneman Bros. v. Allen Cty. Commrs.*, 2015-Ohio-148, ¶ 18 (3d Dist.). To overcome this presumption, a challenger cannot rely on mere allegations; they must present actual evidence to prove the public body acted improperly. *Id.*

{¶34} In its April 18, 2025 entry denying his request for an injunction, the trial court concluded that Pelmear failed to satisfy his burden of proving a violation of the Land Bank's own rules or of R.C. 121.22(F). Specifically, the trial court resolved that the Land Bank established a reasonable notice policy, as required by R.C. 121.22(F), by adopting its code of regulations. The trial court further determined that, for the nine meetings that it found to have occurred, Pelmear failed to provide sufficient evidence that the Land Bank failed to follow its notice policy.

{¶35} On appeal, Pelmear argues the trial court abused its discretion by denying his request for an injunction because he contends that he proved that the Land Bank violated the OMA by failing to adopt a regular meeting schedule, to properly notice its special meetings, and to keep adequate minutes. However, as a threshold matter, Pelmear's claim regarding the adequacy of the Land Bank's meeting minutes is not properly before this court. Indeed, the trial court correctly declined to address this issue (and any issue related to R.C. 121.22(G)) after determining that Pelmear's complaint contained only a single count alleging violations of the OMA's public notice requirements under R.C. 121.22(F). Because the issue of inadequate minutes was not raised in Pelmear's complaint, it is not properly before us, and we will likewise not address it. *See Shie v. Bd. of Education of Hamilton City School Dist.*, 1981 WL 5217, *1 (12th Dist. Oct. 10, 1981).

{¶36} We therefore limit our analysis to Pelmear's arguments pertaining to violations of the OMA's public notice requirements. Pelmear first argues that none

of the Land Bank's gatherings qualified as regular meetings because it failed to follow its own internal rule requiring the adoption of a yearly meeting schedule. He next argues that, because all meetings were consequently special meetings, the Land Bank then violated the OMA by failing to follow its own mandatory notice procedures for those meetings.

{¶37} Based on our review of the record, we conclude that the trial court did not err by denying Pelmear's request for an injunction under R.C. 121.22(I)(1) because he failed to satisfy *his* burden of proving that the Land Bank violated the OMA's public notice requirements. *See Hicks*, 2022-Ohio-4297, at ¶ 10-12 (holding that the plain language of the OMA places the full burden of proof on the plaintiff to prove a violation occurred, and the public body has no corresponding burden to prove its compliance). Pelmear's primary argument is that none of the Land Bank's gatherings qualified as regular meetings because it failed to adopt a yearly meeting schedule, which he contends was required by its own rules. To prevail on this point, Pelmear had the burden of proving that the Land Bank's Code of Regulations actually contains such a requirement. He failed to do so.

{¶38} Critically, the evidence presented at trial established that the Land Bank adopted its code of regulations on August 3, 2017, which set forth its rules regarding its open meetings. The Land Bank's code of regulations specifically delineates, in its relevant part:

# Article IV

## MEETINGS: NOTICES THEREOF

. . .

Section 4.2. Annual Meeting. The Board of Directors shall hold an annual meeting each calendar year on the third Thursday of the third month after the close of the Corporation's fiscal year or on such later date for which notice of such annual meeting is given in accordance with Section 4.5.1 hereof . . . Each annual meeting shall be held in the County at the place set forth in the notice therefore. Notice of such annual meeting shall be given by the Secretary of the Corporation in accordance with Section 4.5.1 . . . .

Section 4.3. Regular Meetings. In addition to the annual meeting, the Board of Directors shall hold at least one regular meeting per calendar quarter of each fiscal year of the Corporation on *such dates and at such times as the Board of Directors shall determine*. Notice of each regular meeting shall be given by the Secretary of the Corporation in accordance with the provisions of Section 4.5.2 . . .

Section 4.4. Special Meetings. The President of the Board of Directors, a majority of the Directors, an Ex officio Director or the Executive Director of the Corporation may call a special meeting of the Board of Directors. Notice of any such special meeting shall be given in accordance with the provisions of Section 4.5.3 hereof.

Section 4.5 Notices to Directors of Meetings. Notice of each regular meeting, special meeting and annual meeting of the Corporation shall be given to each Director in accordance with the provisions of this Section 4.5.

Section 4.5.1. Annual Meeting. Not less than seven (7) days and not more than thirty (30) days prior to an annual meeting, notice stating the date, time, place of the meeting shall be given to the Directors by the Secretary of the Corporation. . . .

Section 4.5.2. Regular Meetings. Not less than seven (7) days nor more than fourteen (14) days prior to a regular meeting, notice stating

the date, time, place of the meeting shall be given to the Directors by or at the direction of the Secretary of the Corporation. . . .

Section 4.5.3. Special Meetings. At least twenty-four (24) hours prior to a special meeting of the Board of Directors, notice stating the date, time and place of the meeting shall be given to the Directors by or at the direction of the Secretary of the Corporation or of the person or persons calling the same.

. . .

Section 4.9. Open Meeting Requirement. Except as otherwise provided in [R.C.] 1724.11(B)(1) . . . , all meetings of the Board at which a determination of the Board is required shall be open to the public. In connection with compliance with this provision, notice to the public, including the news media, of meetings of the Directors for the purpose of conducting the Public Business of the Corporation shall be given as provided in this Section 4.9, including Sections 4.9.1, 4.9.2, 4.9.3, and 4.9.4 hereof.

. . .

Section 4.9.2. Posted or Published Notice of Meetings. Notice of all meetings, specifying the time, place and purpose thereof, shall be given not later than twenty-four (24) hours in advance thereof (1) by posting at the office of the Corporation and at the offices of the County Commissioners and the County Treasurer and (2) by publishing the notice on the publicly accessible website of the County and/or Corporation.

(Bold and underline in original.); (Italics added.) (Respondents' Ex. B).

{¶39} Based on our review of the plain language of the Land Bank's Code of Regulations, it is apparent that Section 4.3 does *not* mandate the adoption of a full yearly schedule.[3] It provides the Land Bank with the flexibility to set its meeting

---

[3] Though the plain language does not mandate the adoption of a meeting schedule, evidence was presented at trial that the Land Bank established a quarterly meeting schedule at its March 1, 2023 meeting. This fact,

dates as needed, so long as it meets quarterly, and it does not require that those quarterly meeting dates to be scheduled in advance. Thus, since Pelmear failed to point to any provision of the Land Bank's Code of Regulations that supports his interpretation, he did not meet his burden of proving that the Land Bank violated its own rules, and his argument that all meetings were consequently special meetings is without merit.

{¶40} Having rejected Pelmear's premise that all of the Land Bank's gatherings were special meetings, his argument that the Land Bank failed to follow the procedures for such meetings necessarily fails. Consequently, our analysis therefore turns to whether the trial court abused its discretion by finding that Pelmear failed to prove the Land Bank violated the general notice requirements established in its Code of Regulations. *See State ex rel. Masiella v. Brimfield Twp. Bd. of Trustees*, 2017-Ohio-2934, ¶ 53 (11th Dist.) (holding that a plaintiff fails to prove an OMA violation where they present no direct evidence that the gathering was prearranged, that public business was discussed, or that any official action resulted from it).

{¶41} Critically, to overcome the legal presumption that the Land Bank acted properly, Pelmear was required to present *actual* evidence of a violation, not just bare allegations. Our review of the record reveals that Pelmear's case was largely

___

however, does not alter our analysis. The dispositive issue is what the plain language of the Code of Regulations requires, not what the Land Bank may have done in practice.

-22-

predicated on such allegations. For instance, Pelmear incorrectly presumed that the dates that the Land Bank accepted a property from M. Prigge (January 5, 2022) and later transferred it (June 8, 2023) were dates on which improper meetings must have occurred. The trial court, however, was presented with testimony from Land Bank board member Robert Hastedt ("Hastedt") refuting these claims.

{¶42} Importantly, Hastedt's testimony established that no meetings occurred on 3 of the 12 dates Pelmear alleged: January 5, 2022, January 11, 2022, and April 4, 2023. For the nine meetings that did occur, Hastedt testified that notice was posted in compliance with Section 4.9.2 of the Code of Regulations. Specifically, he testified that the Land Bank provided public notice by physically posting it at the county commissioners' office and by publishing it on the county's website via the commissioners' public agendas. (*See* Feb. 14, 2025 Tr. at 59, 61). He further testified that the Maumee Valley Planning Organization's website also informs the public that all meetings are open, held at the commissioners' office on an "as-needed basis," and provides contact information for citizens to confirm the next scheduled meeting date. (*Id.* at 49); (Relator's Ex. 5).

{¶43} Nevertheless, Pelmear argues that the trial court erred by denying his request for an injunction because the trial court found that it "heard no evidence as to whether notice . . . was posted at the Henry County Treasurer's office." (Doc. No. 82). This is where Pelmear's burden of proof is dispositive. Importantly, the absence of evidence on one point is not, by itself, affirmative proof of a violation.

*See Gargano v. Grunder*, 1995 WL 411835, *3 (11th Dist. June 23, 1995) (explaining that a plaintiff does not meet their burden of proof simply by pointing to an "absence of evidence" on a particular fact, as such an absence does not constitute affirmative proof of a violation).

{¶44} In this case, the trial court was presented with testimony from Hastedt affirming the Land Bank's general compliance with its notice procedures. In contrast, Pelmear presented *no* evidence to demonstrate that the Land Bank failed to post the required notice. His reliance on a gap in the record is not a substitute for the actual evidence he was required to produce to satisfy his burden and overcome the presumption of regularity. Thus, since he failed to produce any evidence of a violation, Pelmear did not meet his burden of proving a violation of R.C. 121.22(F). Consequently, because Pelmear failed to satisfy his burden, we conclude that the trial court did not err by denying Pelmear's requested injunctive relief.

{¶45} For these reasons, Pelmear's second and third assignments of error are overruled.

{¶46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

-24-

Case No. 7-25-05

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge


_____
John R. Willamowski, Judge

DATED:
/hls